Mattie **ROBINSON** et al., Plaintiffs,

v.

James A. **RHODES**, Governor of Ohio, et al., Defendants.

Civ. A. No. C 76–293A.

United States District Court,
N. D. Ohio, E. D.

Oct. 29, 1976.

---

Anthony J. Touschner, Summit County Legal Aid Society, Akron, Ohio, for plaintiffs.

William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, William E. Schultz, Asst. Pros. Atty., Akron, Ohio, Terry L. Tataru, Trial Atty., Asst. Atty. Gen., Columbus, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

Invoking the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, plaintiffs initiated this action on September 21, 1976, under 42 U.S.C. § 1983 to redress alleged deprivations of their constitutional rights. On September 21, 1976, the Court granted plaintiffs' motion for a temporary restraining order and directed defendants to make certain welfare payments both to plaintiffs and to the members of their class. The subject temporary restraining order has been amended to provide a procedure for such payments and the date of compliance therewith has been extended until the Court makes its final decision. Final hearing was consolidated with the hearing on the plaintiffs' motion for a preliminary injunction; said hearing was conducted on October 15, 1976. The following shall constitute the Court's findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

## PARTIES

Plaintiffs are indigent residents of Summit County, Ohio. It is alleged that they qualify for the receipt of payments under the general relief program, purportedly administered by the Summit County welfare department under the supervision of the Ohio Department of Public Welfare (hereinafter O.D.P.W.). See Ohio Revised Code Chapter 5113. Although this action was originally commenced as a class action on behalf of all persons so similarly situated, upon defendants' representation that the Court's decision would bind them as to all such persons, the Court denied certification of the class as needless in this action.

The principal defendants in this action are James A. Rhodes, Governor of the State of Ohio; Kwegyir Aggrey, Director of the Ohio Department of Public Welfare; and Raymond McKenna, the Assistant Director of the Ohio Department of Public Welfare. In their amended complaint, the plaintiffs also named the following persons as defendants in this action: Thomas Ferguson, Auditor of the State of Ohio; Gertrude Donahey, Treasurer of the State of Ohio; Francis J. Birkel, Director of Summit County Welfare Department; Thurman Cole, Richard Slusser, and Don Stephens, Summit County Commissioners; John Poda, Jr., Auditor of Summit County, Ohio; and Arthur Swanson, Treasurer of Summit County, Ohio. The Court permitted the joinder of said persons because it found that their presence was necessary in this action. See Rule 19(a) Federal Rules of Civil Procedure. The Court specifically finds, however, that plaintiffs have failed to prove that these last named defendants have acted in violation of plaintiffs' state and constitutional rights.

## FACTS

The State of Ohio has established a general relief program pursuant to Chapter 5113 of the Ohio Revised Code. This welfare program provides financial and medical assistance to destitute individuals and families ineligible for other, federally fund-

ed programs. The Ohio Department of Public Welfare, by regulation, establishes the eligibility requirements and sets a maximum and minimum payment which may be made to a recipient and for which the State will reimburse the local relief authority.

■ Summit County, Ohio participates in said program, and its welfare department has been duly designated as the local relief authority for Summit County. Pursuant to said responsibility, the Summit County welfare department distributed general relief payments to over 5,000 recipients in Summit County until May 31, 1976. At that time, as a result of the actions of the Summit County Commissioners limiting the appropriation of the County's share for said program, the Summit County welfare department found itself in the unenviable position of being financially unable to meet its obligations under said plan. Thereupon, the O.D.P.W. stopped sending general relief funds to Summit County. While there was no evidence specifically brought forth at the trial regarding the reason for the Summit County Commissioners' action, the Court judicially notices that the Commissioners' action occurred at about the same time as the national rubber strike. No payments have been made to Summit County recipients under said program, as to either the county or the state's share thereof, since May 31, 1976.

Thereafter, members of plaintiffs' class filed an action in the Court of Common Pleas of Summit County, Ohio against certain of the local defendants. By said action, the plaintiffs therein sought to compel defendants Birkel and the Summit County Board of Commissioners to resume payments under the gen- -al relief program. The Common Pleas Court concluded that plaintiffs were not a proper party to that action. In the alternative, said court also concluded that the county defendants had adequately established the impossibility of their performance of their obligations under the general relief program and that such constituted a defense to the asserted action. This decision is presently on appeal. Plaintiffs did not therein raise the federal constitutional claims, nor were the principal defendants to this action parties thereto.

■ The Court finds that each of the three named plaintiffs are eligible at this time to receive general relief payments. Each of said plaintiffs are indigent and in dire need of financial assistance.

The Summit County welfare department, prior to May 31, 1976, employed approximately 65 persons to administer the general relief program. Today, there are approximately 10 or 12 persons working, in part, on said program. Until this Court's Order, said department was not maintaining lists of persons eligible for such relief. Said department is not accepting applications from county residents for determination of eligibility for said program. And, of course, said department is not rendering any financial assistance to any such persons.

However, the Summit County welfare department is functioning on a "referral" basis. Pursuant to an informal agreement with the local hospital association, said department certifies to the hospitals which persons would be eligible for medical assistance under the program, while not promising payment for any services rendered. Pursuant to said agreement, the local hospitals are rendering some medical assistance to persons so certified. However, the level of assistance, particularly with reference to dispensing drugs, has decreased. It must further be noted, however, that said department has not uniformly notified all persons eligible for such relief of the hospitals' cooperation in this matter. The Summit County welfare department also provides relief to those persons eligible for other federally funded programs such as the food stamp program.

On July 16, 1976, plaintiffs' counsel notified defendants Rhodes, McKenna, and Aggrey of the termination of the general relief program in Summit County, Ohio. Defendants McKenna and Aggrey had been notified of said termination by the local defendants in either April or May of this year. In said letter, plaintiffs' counsel requested defendants to act pursuant to §§ 329.041 and 5113.09 of the Ohio Revised

Code and assume the administration of the Summit County Welfare Department and resume the payment of benefits. The principal defendants have refused to comply with said request.

In May, 1968, the O.D.P.W. exercised its discretion under one of said sections, O.R.C. § 329.041, by appointing Carl Albu as Administrator of the Noble County, Ohio Department of Welfare. Said action resulted from a decision of the Board of County Commissioners of Noble County refusing to take certain action relative to the salaries of the employees of said county's welfare department. Assertedly, the Commissioners' decision was in violation of state law and jeopardized the state's receipt of certain federal monies for other welfare programs. The O.D.P.W.'s supersession of the county welfare department's responsibilities continued until October 31, 1970. On said date, control was returned to the county commissioners of Noble County.

In approximately 1968 and 1969, other fiscal problems involving the O.D.P.W. surfaced in Franklin County, Ohio. The operative facts are related in *State ex rel. Brown v. Board of County Commissioners*, 21 Ohio St.2d 62, 225 N.E.2d 244 (1970). In that case, it appeared that actual expenditures for the year 1968 exceeded the O.D.P.W.'s estimates, and that therefore Franklin County was required by law to appropriate additional monies for the operation of its welfare programs. However, it also developed that Franklin County was without adequate financial resources to appropriate the monies due and for that reason the Supreme Court of Ohio denied the Writ of Mandamus sought on behalf of the O.D.P.W. The testimony at the trial of the instant action revealed that throughout the controversy between the O.D.P.W. and Franklin County, the expenditure of welfare benefits to Franklin County residents continued on the normal reimbursement basis contemplated by Ohio law. Precisely how the deficit which was the subject of that action accrued was not related at trial. However, the Court specifically finds that the O.D.P.W. did not act pursuant to §§ 329.041 or 5113.09 of the Ohio Revised Code and supersede the authority of the county department of welfare.

### DISCUSSION AND CONCLUSIONS OF LAW

Plaintiffs' primary claim is that the refusal of defendants Rhodes, McKenna, and Aggrey to exercise their authority under the statutes of the State of Ohio to reinstate general relief payments in Summit County constitutes a violation of their rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution. However, plaintiffs' repeated references in their complaint to an alleged violation by said defendants of their statutory duties also implicitly raises a pendant statutory claim.[1] The Court must first, therefore, address the state law claims. See *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Wyman v. Rothstein*, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970).

Analysis of the statutory claims must commence with the review of Ohio's statutory general relief program.[2] General relief is a welfare program funded entirely by non-federal funds. It provides ongoing financial and medical assistance to destitute individuals and families ineligible for other more amply funded, federally reimbursable programs. The Legislature of the State of Ohio has provided that each of the State's counties shall maintain a county welfare department and that each said department shall constitute the local relief authority referred to in the Ohio Revised Code chapter on poor relief, Chapter 5113. See O.R.C.

---

1. The parties' recognition of the pendency of said claim is demonstrated by their references to and complete briefing of this state law issue. However, to clear the record, the Court shall grant plaintiffs' leave to amend their complaint to more clearly delineate the nature of their claims.

2. The Ohio statutes refer to said program as "poor relief". See Ohio Revised Code, § 5113.-01.

§ 5113.02. It has further provided that each county shall furnish general relief to all eligible persons therein.

The county welfare departments perform numerous functions including receipt and processing of applications for benefits, determinations of eligibility therefore, disbursement of public funds both directly to the individuals and to institutions for services rendered, and periodic review of particular cases. Each of these functions are supervised by the Ohio Department of Public Welfare through its district offices. By regulation, the O.D.P.W. establishes eligibility levels and deals with practically every facet of said administration. Practically the only discretion left in the county welfare department is a determination of the amount and manner of payment of benefits. However, even this discretion is carefully limited by O.D.P.W.'s regulations which provide both maximum and minimum benefits payable to recipients for which the state will provide reimbursement.

Funding for the program comes primarily from state funds. Each county is required to provide a specified portion of the total expenditures in that county for general relief, as determined by a specific formula. See O.R.C. § 5101.16(B). Said formula takes into consideration a number of factors; obviously one of its chief functions is to attempt to secure equal benefit levels throughout the State, despite the differing economic capabilities of various counties.

The Summit County welfare department has been established as the local relief authority for the administration of general relief in said county. Application of the reimbursement formula to the general relief program in Summit County for the calendar year 1976 resulted in Summit County being obliged to provide twenty-five per cent (25%) of the total cost of its general relief program; the remaining monies were to be derived from the State's appropriation for welfare payments and channeled to Summit County through O.D.P.W.

Pursuant to statute, the O.D.P.W. forwards its share of funds to the county welfare departments on a reimbursement basis. In December of any year, the O.D.P.W. estimates, on the basis of historical data, the amount of money which it will be required in the coming year for reimbursement to a county welfare department. O.R.C. § 5101.161. Thereafter, on or about the first of every month, the O.D.P.W. causes a warrant to be issued to the county welfare department on the basis of the estimated monthly expenditures. Periodically, there is a reconciliation between these estimates and actual expenditures by the county welfare department.

In general terms, the O.D.P.W.'s functions as to the general relief program are set forth in Ohio Revised Code § 5113.09. Said section provides as follows:

"The department of public welfare shall:
(A) Make reasonable rules for the effective administration of poor relief;
(B) Make investigations of local administration and issue orders for the correction of any violations of law or regulation; and reimbursement may be discontinued by the state until such orders are complied with;
(C) Prescribe forms and require reports from local relief authorities, either directly, or through any county officer or board, and from such officer or board, in such form as is prescribed;
(D) Determine the kinds and amounts of obligations for poor relief and the administration thereof on which state reimbursement will be based;
(E) Co-operate with agencies of the federal, state, and local governments;
(F) With the approval of the board of appeals created by section 5107.08 of the Revised Code, administer poor relief in any local area where no local relief department has been established or is in operation. If the department of public welfare becomes the local relief authority for any county it may expend any local funds available for poor relief, and for a period not to exceed three months, may, if necessary, pay the entire cost of poor relief from the state appropriation for relief."

The authority for the O.D.P.W. is augmented by other sections of the Ohio Revised Code. In particular, § 329.041[3] thereof provides said department with the discretion to supersede the county welfare department where said local department is in violation of specific provisions of the Ohio Revised Code or fails or refuses to comply with regulations issued by the O.D.P.W.

The first issue which the Court shall address is plaintiff' claim that defendants Aggrey, McKenna and Rhodes have failed to fulfill their responsibility under § 5113.-09(F). Defendant Rhodes, as Governor of the State of Ohio, has not been shown by plaintiffs to have any substantial involvement in the events leading up to this lawsuit.

■ While Governor Rhodes was informed of the situation in Summit County, there is no evidence before the Court that said defendant took any action in this matter. Rather, the evidence before the Court indicates that Governor Rhodes never spoke with the officials of the O.D.P.W. about this problem. As there is no specific statutory obligation imposed upon the Governor and as said defendant did not block action by the remaining defendants, plaintiffs have failed in their burden of proving said defendant's liability herein.

The Court reaches the contrary conclusions as to defendants McKenna and Aggrey. Defendant Aggrey is the director of the Ohio Department of Public Welfare and as such is ultimately responsible for its operations. Defendant McKenna is Aggrey's assistant and has particular responsibilities in fiscal matters. The evidence indicates that both McKenna and Aggrey were made personally aware of the situation in Summit County and that they were invited to take action under § 5113.09(F). The evidence

further indicates that both defendants intentionally refused to comply with such request.

Subsection (F), as quoted above, establishes a mandatory duty on the part of O.D.P.W. to administer general relief in any local area where no local relief department (county welfare department) "has been established or is in operation." As it is clear that a county welfare department has been established in Summit County, the only relevant question is whether it is "in operation".

In support of their contention, defendants point to said department's referral activities and its administration of other programs which may benefit some of the persons eligible for general relief.

■ Upon consideration, the Court concludes that this extremely limited action by the Summit County welfare department does not constitute operation within the meaning of the subject statute. The statutory scheme makes clear that it was intended by the Ohio Legislature that benefits be paid and provided by the local relief authorities. Simply stated, it is obvious to this Court that the Legislature intended that the local relief authority be a viable means for achieving the purpose of the statute, which is to provide relief to the needy persons eligible therefore.

However, the Summit County welfare department is disbursing no funds, either directly to eligible persons or to other institutions providing benefits. It is not maintaining lists of persons eligible for such relief. It is not accepting applications from county residents for such relief. As these are the vital functions contemplated by the Legislature, said department is not "in operation" within the meaning of § 5113.-09(F).

---

**3.** Said section provides: "If the department of public welfare finds that the provisions of Chapter 5107. or 5113. of the Revised Code are not being complied with by the county department of welfare, or that the county department fails or refuses to comply with regulations issued pursuant to such chapters, it may supersede the county commissioners of any county with respect to their powers and duties in rela-tion to the county department of welfare and exercise such powers and duties until satisfied that such laws and regulations will be complied with. Notice of such action shall be taken by notifying the county commissioners, the county auditor, and the department of administrative services in writing. The board of county commissioners may appeal such action to the common pleas court of Franklin county."

■ In view of this finding, the Court must conclude that the Ohio Department of Public Welfare had the duty under the law of the State of Ohio to administer poor relief in Summit County. Defendants Aggrey and McKenna's failure to perform their duty under this section constitutes a violation of state law.

The next issue relates to the extent of the O.D.P.W.'s duty under § 5113.09(F). Said section specifically provides that where O.D.P.W. assumes the administration of the local relief authority, it may spend any local funds available for poor relief. Said section also provides that the O.D.P.W. may "if necessary", pay the entire cost of general relief from the state appropriation for a period not to exceed three months. As there are no local funds available in Summit County for said program, the first clause is obviously inapplicable. However, the second clause provides explicit statutory authority for the O.D.P.W. to pay the entire cost of the general relief program of Summit County for up to three months.

■ Defendants Aggrey and McKenna argue that their authority under this section is discretionary. In support of this contention, said defendants point to the use by the Legislature of the words "may" and "if necessary".

The Legislature's language must be construed in light of the legislative purpose in enacting the general relief program. Legal scholarship is not necessary to determine that this basic purpose is, as indicated above, to provide relief to eligible individuals sufficient to "maintain health and decency, taking into account the requirements and the income and resources of the recipient." O.R.C. § 5113.03.

Necessity then, as used in § 5113.09(F), must be construed as referring to a situation where no or insufficient funds are available to provide the relief required by statutes. This construction is further bolstered by that section's preceding reference to the use of any available local funds.

■ Having established the meaning of the Legislature's reference to necessity, the next issue is the extent of the discretion afforded the O.D.P.W. under this clause.

A comparison of § 329.041 with § 5113.-09(B) and (F) will aid analysis. Section 329.041 provides discretion to supersede local authorities when they are in violation of state law or O.D.P.W. regulations. Section 5113.09(B) provides the further sanction in such a situation of discontinuance of reimbursement payments to the local authority. These sections plainly are directed at circumstances different from those envisioned in § 5113.09(F). This subparagraph provides for the situation in which a local relief authority is not "in operation". Yet a county welfare department has a duty under state law to be in operation. See § 5113.02; *Shaffer v. Harshaw,* Civil Action No. C–2–75–667 (S.D.Ohio 1976); *Dixon v. Birkel,* C.A. No. 7623 (9th Dist. Ohio Ct. of Appeals 1975). The only situation which the Court can envision in which the subject clause of § 5113.09(F) would not be duplicative of § 329.041 in relation to the general relief program, is where a county health department is not in operation because its duty to do so is legally excused, e. g., where part or full performance is impossible. In such a situation, the Legislature provided that the O.D.P.W. must take over administration of the local relief program. It provided that the O.D.P.W. "may" use whatever local funds are available and that the O.D.P.W. "may", if necessary, use state funds to fund the entire program for a limited period.

Plainly, the Legislature intended that O.D.P.W. use whatever local funds are available in normal circumstances; the only conceivable explanation for the discretionary term "may" in that instance is to provide for local emergency situations where, for some reason, those local funds are needed for other purposes. Only a similar construction of the Legislature's use of "may" in the next clause of that subsection is consistent with the Legislature's direction that the O.D.P.W. assume administration of the local relief authority. This Court must construe statutes reasonably. A construc-

tion of a statute contrary to that just mentioned, and in accordance with defendants' arguments, would effect the situation where the Legislature has directed the O.D. P.W. to take action devoid of any real meaning consistent with the purpose of the statute.

So construed, the subject clause of § 5113.09(F) provides only very limited discretion in the O.D.P.W. in the circumstances of this case. Said department must use state funds unless unforeseen circumstances, such as lack of funds or emergency commitments in other areas, precludes such action.

It is clear that defendants Aggrey and McKenna abused their discretion under this statute. The only reasons advanced in support of their argument that even if § 5113.-09 is applicable they need not use state funds is their reference to their authority in § 5113.09(B) to withhold funds, which as the Court has found is applicable only where the relief authority is in violation of laws or regulations; and their claim that to so act would encourage fiscal irresponsibility by other counties.

■ Since this is not a case where the local authorities are in violation of state law or O.D.P.W. regulations, § 5113.09(B) is inapplicable. The second ground is not only speculative, but it presumes that county officials will act irresponsibly and in disregard of their statutory obligations under Ohio law; such a conclusion may not be presumed. Cf. 16 C.J.S. *Constitutional Law* § 100, p. 468 (1956). Furthermore, the limited form of discretion allowed by the subject provision does not permit such evaluations. In short, the defendants' discretion must be guided by the purpose of the statute; a decision which both ignores the reasonable interpretation of the statute and which renders meaningless the action directed by the Legislature will not be sanctioned under the guise of discretionary policy.

■ The Court concludes that under the circumstances of this case, the O.D.P.W. had the duty under state law to both administer the Summit County, Ohio general relief program and to provide state funds for the full three months or until Summit County was again able to operate the program, whichever came first.[4] The actions of defendants Aggrey and McKenna in preventing this result was an abuse of their discretion under state law.

■ As additional and alternative grounds, the Court concludes that the actions of defendants Aggrey and McKenna constitute a violation of plaintiff's Fourteenth Amendment rights to equal protection of the laws.

Analysis of this claim must commence with the fact that indigent residents or citizens of Ohio meeting the eligibility requirements for general relief have a right to such relief under state law. The actions of defendants Aggrey and McKenna in refusing to administer and fund the relief program in Summit County, Ohio has effected two classifications in this State. The first classification consists of those residents or citizens eligible for general relief and residing in counties other than Summit County, Ohio; the second classification consists of those persons eligible for general relief and residing in Summit County, Ohio.

As stated by the Supreme Court in *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of government are practical ones and may

---

4. The constitutionality of § 5113.09(F), and specifically the three month limitation on benefits, is not in issue in this action. The Court therefore expresses no opinion on this issue.

justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393]."

In such circumstances, the rational basis test is applicable. *Id.* See also *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1974). Cf. Gunther, *The Supreme Court, 1971 Term—Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv.L.Rev. 1 (1972). This traditional equal protection test "examines the classification for a rational basis or a rational nexus with a valid legislative purpose." *Tanner v. Weinberger,* 525 F.2d 51, 53 (6th Cir. 1975). The Court concludes that said test is applicable herein.

Application of this test to the instant case convinces the Court that the classifications effected by the intentional inaction of defendants Aggrey and McKenna, under color of law, constitutes invidious state action.

The Court concludes that the reasons advanced by said defendants for their actions do not rationally advance a legitimate state interest. At the trial of the instant case, defendant McKenna testified that, in his opinion, if the O.D.P.W. were to perform its responsibilities under § 5113.09(F), other counties in Ohio experiencing financial difficulties would be encouraged to follow fiscally irresponsible policies thereby necessitating further state involvement in said counties. Presumably said concerns are directed toward preservation of state funds.

The Court notes that the Ohio Legislature has not reflected a concern for such a possibility in any of the statutes under consideration herein. Rather, the principal defendants' decision on such a basis obviously constitutes their independent evaluation of how to advance the State's interests.

Preservation of state funds is obviously a legitimate state interest. However, the extensive supervisory control exercised by the O.D.P.W. over county welfare departments, as demonstrated both by its regulations and by the extensive statutory discretion accorded to such departments under O.R.C. §§ 5113.09 and 329.041, significantly limits the factual basis of defendants' argument. It is clear that the O.D.P.W. has a number of more specific and effective means in its arsenal to control any fiscal irresponsibility which may be demonstrated by local relief authorities. Cf. *Kelm v. Carlson,* 473 F.2d 1267, 1272 (6th Cir. 1973).

Furthermore, to presume that at some date in the future other county officers will act irresponsibly and for the express purpose of evading their responsibility under state law to provide general relief assistance is both speculative and presumptive of illegal conduct by government officials. There is no indication that Summit County officials engaged in such chicanery; nor is there any evidence, other than defendant McKenna's opinion, that other county officials would so act. As previously indicated, this Court will not presume such future conduct. The denial of any relief benefits to persons in dire need thereof on that basis is not rational.

This irrationality is demonstrated by comparison to *United States Department of Agriculture v. Moreno, supra.* In that case, participation in the food stamp program was denied to any household containing an individual unrelated to any other member of the household. The Supreme Court concluded that the government's asserted interest in minimizing fraud in the administration of the food stamp program was based upon the wholly unsubstantiated premise that the excluded households were more prone to fraudulent abuse of the program than familial households. The validity of defendants Aggrey and McKenna's supposition that other county officials will act irresponsibly is equally unfounded and, therefore, wholly without any rational basis. Cf. *Morales v. Minter,* 393 F.Supp. 88, 101 (D.C.1975).

The only remaining issues relate to the remedy to be afforded. Defendants Aggrey and McKenna have authority under O.R.C. § 5113.09(F) to completely fund the general relief program in Summit County, Ohio for no more than three months. While the Court has ordered in its temporary restraining order payment for the month of September, 1976, the amount of payment ordered is only seventy-five per cent (75%) of the monthly payment due. The Court cannot, because of the Eleventh Amendment, order full payment for said month at this time. Cf. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). To assure continuity of payments, the Court hereby vacates its temporary restraining order, and it shall order defendants Aggrey and McKenna to commence the three month period specified under O.R.C. § 5113.09(F) in October, 1976.

Upon consideration, the Court shall issue the following orders to defendants Aggrey and McKenna:

Defendants Aggrey and McKenna are hereby ordered to immediately assume, on behalf of the O.D.P.W., the administration of the general relief program in Summit County, Ohio. The administration of said program shall include acceptance and processing of all applications for benefits, and certification of eligibility of said persons if they are found to meet O.D.P.W.'s eligibility requirements. Said defendants shall also cause O.D.P.W. to pay the entire cost of general relief in said county from the State's appropriation for relief.

The relief granted shall be in accordance with O.D.P.W. regulations. It shall include payments for medical and any other covered services rendered after the issuance of this Order. It shall further include at least the minimum payments to eligible individuals and families during the time period stated below, as computed from O.D.P.W.'s schedule of minimum benefits.

Defendants Aggrey and McKenna are hereby ordered to immediately commence effecting payments in the appropriate amounts to all persons previously certified by the Summit County Department of Welfare as eligible to receive general relief benefits for October, 1976. Said payments shall be made on or before October 31, 1976. However, should said defendants find that compliance by that date is impossible, they may move the Court on November 1, 1976 for an extension of time until no later than November 5, 1976 to make the subject payments.

Said defendants shall continue the administration and payment of benefits by O.D.P.W. of the general relief program in Summit County until January 1, 1977 or until the Summit County Commissioners appropriate sufficient funds for the local welfare department to maintain the same benefit levels called for by this Order, whichever first occurs.

If the O.D.P.W. is still administering the general relief program in Summit County, Ohio on November 15, 1976, defendants Aggrey and McKenna shall cause it to pay benefits at the levels above indicated, on or before November 20, 1976, to all persons found to be eligible for general relief benefits in Summit County as of November 15, 1976. The same conditions shall apply to December, 1976; however, eligibility and O.D.P.W.'s obligation shall be determined as of December 15, 1976 and payments, if required by this Order shall be made or effected by December 20, 1976.

Plaintiffs are hereby granted leave to amend their complaint, within ten (10) days of the date of this Order, to reflect their claims under state law.

IT IS SO ORDERED.