**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**CITY COLLEGES OF CHICAGO; Board of Trustees of Community College District 508; and Cook County College Teachers Union, Local 1600, AFT, AFL–CIO, Defendants.**

**No. 88 C 10726.**

United States District Court, N.D. Illinois, E.D.

April 24, 1990.

---

**510**

Steven L. Brenneman, John P. Rowe, Jason H. Hegy, E.E.O.C., Sharon A. Seeley, Chicago, Ill., for E.E.O.C.

Gilbert Feldman, Cornfield and Feldman, Chicago, Ill., for College Teachers Union, Local 1600, AFT, AFL–CIO.

Thomas E. Johnson, Johnson, Schaef & Jones, Chicago, Ill., for City Colleges of Chicago and Board of Trustees of Community College Dist. 508.

## ORDER

NORGLE, District Judge.

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC") brings this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621 *et seq.*, as it is authorized to do under Section 7(b), 29 U.S.C. § 626(b), against defendants, the City Colleges of Chicago,[1] and the Board of Trustees of Community College District 508 ("City Colleges") and the Cook County College Teachers Union, Local 1600, AFT, AFL–CIO ("Union").[2] The EEOC alleges that defendants are party to a collective bargaining agreement containing an early retirement program which violates Section 4(a) of the ADEA, 29 U.S.C. § 623(a), by providing older faculty members with "reduced early retirement benefits (relative to younger persons similarly situated) on the basis of age." Specifically, the EEOC alleges that

> (a) the early retirement program provides lump sum payments for accumulated sick pay based on a lower percentage of accumulated sick pay for retirees age 65 and over than for retirees under age 65; and

> (b) the early retirement program provides a lower level of group insurance benefits to older persons based on age because it provides no coverage after the time of retirement for retirees age 65 and over, and because of those persons who retire between the ages of 55 and 64 older persons receive fewer years of coverage based on their ages.[3]

First Amended Complaint, ¶ 8. According to the EEOC, the result of these benefit differentials is that employees are "forced" to retire by age 65. The EEOC seeks both damages and injunctive relief.

Subsequent to the filing of this action, the defendants have negotiated a four year successor collective bargaining agreement which contains a "tentative" successor early retirement program. Counterclaim for Declaratory Judgment, ¶ 6. The Union has requested that the EEOC "review" the tentative successor early retirement plan, but the EEOC has declined.[4] The Union has filed a counterclaim for a declaratory judgment, pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act"), adjudicating the legality of the tentative successor early retirement program under the ADEA. A copy of the tentative successor early retirement program is attached as an exhibit to the counterclaim. The tentative successor early retirement program differs from the early retirement program challenged by the EEOC.

---

**1.** The Board of Trustees of Community College District 508 asserts that the City Colleges of Chicago is not a legally-cognizable entity, but rather is the colloquial name for the set of institutions it administers. The Board of Trustees of Community College District No. 508's Answer to the First Amended Complaint, ¶ 4.

**2.** The Union, having an interest in the subject of the action, was named as a defendant pursuant to Fed.R.Civ.P. 19(a)(2).

**3.** Paragraph 8(b) of the EEOC's First Amended Complaint is a little confusing, probably the result of a typographical error. The EEOC's claim essentially is that although all employees over age 55 are given the option of early retirement, those who between age 65 and 69 are provided lesser benefits relative to those who take early retirement between age 55 and 64.

**4.** Under 29 C.F.R. § 1626.17, issuance of an opinion letter by the EEOC is discretionary.

Before the court are the City Colleges' motion for summary judgment, pursuant to Fed.R.Civ.P. 56(b), on the EEOC's ADEA claim and the EEOC's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), (6), the Union's counterclaim. The court will address the motion to dismiss first.

## MOTION TO DISMISS

■ On a motion to dismiss, the allegations of the complaint, as well as the reasonable inferences to be drawn from them, are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

■ The EEOC moves to dismiss the Union's Counterclaim on the grounds that, since the counterclaim fails to present an existing case or controversy, the court lacks subject mater jurisdiction over it. *See Lewis v. Continental Bank Corp.*, —— U.S. ——, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400 (1990).

The Declaratory Judgment Act provides: In a case of actual controversy within its jurisdiction, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration ...

28 U.S.C. § 2201. The Declaratory Judgment Act did not (and could not) alter the requirement, contained in Article III of the Constitution, that the jurisdiction of the federal courts extends only to adjudicating actual cases or controversies. *See Crowley Cutlery v. United States*, 849 F.2d 273, 276 (7th Cir.1988); *Vickers v. Henry County Savings & Loan Assoc.*, 827 F.2d 228, 230–31 (7th Cir.1987) ("In the context of cases in which, ..., declaratory relief is sought, the traditional test of justiciability has been whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warranty the issuance of a declaratory judgment.' ").

In its counterclaim, the Union simply concludes that: "An actual controversy exists within the scope of 28 U.S.C. § 2201 over the validity of said successor agreement under the ADEA." Counterclaim, ¶ 9. Yet, conspicuous by their absence are allegations of any facts which would support this conclusion. Rather, the opposite conclusion—the lack of an actual case or controversy—is inescapable.

The EEOC's ADEA action does not attack the successor early retirement program. This is because the successor early retirement program is not in effect. Note the Union's candid labeling of it as a "tentative" successor. Thus, not only is it not in effect, it may never become effective.[5] *See* Counterclaim, ¶ 7. The tentative successor early retirement program has not been challenged under the scheme created by ADEA by any City College faculty member or the EEOC. There is no "existing legal dispute." There can be none over the subject of the counterclaim prior to the tentative successor early retirement program becoming effective. The Union has simply come to this court seeking "advice on the legality of a proposed course of action"—Something this court cannot give. *See Crowley Cutlery Co.*, 849 F.2d at 276.

The nature of the "dispute" presented in the Union's counterclaim is similar to that presented in *People of State of Illinois v.*

---

5. The tentative successor agreement provides that, if it is not approved by either the EEOC or an United States District Court, a replacement early retirement program will be negotiated.

*Archer Daniels Midland Company*, 704 F.2d 935 (7th Cir.1983), where no actual case or controversy was found to exist. In *Archer Daniels Midland,* the State's Attorney of Peoria County, alleging that it "will and is prepared to file [criminal] charges against Archer Daniels Midland," sought an order determining whether the state law under which it was considering charging Archer Daniels Midland has been preempted. 704 F.2d at 938. The Seventh Circuit concluded that any dispute between the state's attorney and Archer Daniels Midland "had not ripened into an actual controversy within the meaning of Article III of the Constitution ..." 704 F.2d at 941. There was only a potential controversy which will become actual if and when [the States' Attorney] prosecutes." *Id.* Similarly, here there is only a potential controversy between the Union and the EEOC over the tentative successor early retirement program, which will become actual only after a number of events have occurred. One of these is the tentative successor early retirement plan becomng effective.[6] *See also Vickers*, 827 F.2d at 231–32 ("any potential harm appellants may experience is entirely based upon a hypothetical contingency: if they default on their loan, ...").

■ Moreover, even if an actual case or controversy existed, the Declaratory Judgment Act merely "provides an additional remedy in cases resting on some independent basis of federal jurisdiction." *Air Line Pilots Association, International v. Trans World Airlines, Inc.*, 713 F.2d 940, 949 (2d Cir.1983). The Union invokes the ADEA. However, "the ADEA does not provide employers or labor unions with a cause of action to preempt the rights of employees by filing an anticipatory declaratory judgment action to establish a statutory defense." 713 F.2d at 950.

Aside from the fact the purpose of the ADEA would be frustrated by [a] declaratory action, the action would also bypass the statutory procedure provided for by the ADEA, which is based upon the prior filing of a charge of unlawful discrimination with the EEOC beginning a process of "conciliation, conference and persuasion.

713 F.2d at 951. Accordingly, the EEOC's motion to dismiss the Union's counterclaim is granted.

## MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which support his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

---

**6.** The Union and The City Colleges assert that the legal uncertainty of the tentative successor early retirement program constitutes an impediment to conducting business; thereby creating what they perceive as the actual controversy necessary for subject matter jurisdiction. *See Archer Daniels Midland,* 704 F.2d at 943. Here, as the EEOC notes, any threat is self inflicted. The Union and the City Colleges cannot contract their way to jurisdiction by agreeing to abandon the tentative successor early retirement program if it is not approved, ergo the threat of abandoning early retirement altogether.

The City Colleges advances three separate grounds for a summary judgment in its favor. First, that the early retirement program is exempted from review under Section 4(f)(2) of the ADEA. 29 U.S.C. § 623(f)(2). Second, that the EEOC's challenge of the early retirement program is barred by the statute of limitations. Third, that the EEOC's claim is barred by laches. These will be dealt with in the order presented.

■ Under the ADEA, it is not unlawful for an employer or labor organization

> to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual and no such ... employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual...."

29 U.S.C. § 623(f)(2).

The Seventh Circuit has recently examined this very early retirement program to determine whether it fit into the exemption created by § 623(f)(2) and the interpretive regulations promulgated thereunder, 29 C.F.R. § 1625.10(a)(1), (d)(1)–(3). See *Karlen v. City Colleges of Chicago*, 837 F.2d 314 (7th Cir.1988). The *Karlen* court held that, in order to invoke the safe harbor of § 623(f)(2), the employer whose early retirement program offers varying retirement benefits based upon age must prove a close correlation between age and the costs of providing benefits for older workers. 837 F.2d at 319. Effectively, under *Karlen* any plan offering retirement benefits based upon age which are not cost related was a "subterfuge" and subject to ADEA based claims.[7]

However, subsequent to *Karlen*, the U.S. Supreme Court invalidated the objective cost-justification requirement of 29 C.F.R. § 1625.10 as contrary to the plain language of § 623(f)(2), which focuses on

the subjective intent of the employer enacting the plan. *See Public Employees Retirement System of Ohio v. Betts,* —— U.S. ——, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989). *Betts* involved a challenge to a retirement and disability plan which denied disability retirement benefits to employees over the age of 60 at retirement. 109 S.Ct. at 2858–59. In implicitly overruling *Karlen,* the *Betts* Court rejected the interpretation that only those employee plans having age based reductions in benefits which are justified by age related cost considerations are exempt from scrutiny under the ADEA. 109 S.Ct. at 2865. Under *Betts,* benefit plans with age based variances in benefits are neither automatically entitled to exemption, if the variances are cost based, nor automatically a "subterfuge" subjecting the employer to ADEA liability, if the variances are not cost based.

Instead, whether or not a plan was a subterfuge was, consistent with the court's definition of subterfuge as "a scheme plan, stratagem or artifice of evasion," held dependent upon whether the employer enacting the plan intended to evade the prohibition against discrimination based upon age in hiring, firing, compensation, and nonfringe-benefit terms and conditions of employment. 109 S.Ct. at 2863–66. The Court concluded that the ADEA's prohibition of discrimination "against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's age," 29 U.S.C. § 623(a), did not encompass the employee benefit plans covered by § 623(f)(2). 109 S.Ct. at 2866.

> Thus, when an employee seeks to challenge a benefit plan provision as a subterfuge to evade the purposes of the Act, the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation.

7. The EEOC was not a party to *Karlen,* which settled after a petition for writ of certiorari was denied by the Supreme Court, but before trial pursuant to remand.

109 S.Ct. at 2868; *see also Robinson v. County of Fresno,* 882 F.2d 444 (9th Cir. 1989).

Summary judgment in favor of the City Colleges based upon the rule announced in *Betts* would not be proper.[8] There is no need for the court to enumerate those material facts as to which the parties contend there are and are not genuine issues. There remains a genuine issue as to whether the City College's intent in enacting the early retirement program was that it serve as a "subterfuge." Plaintiff's Statement of Additional Uncontested Facts, ¶¶ 1–12.

■ The ADEA adopts as the statute of limitations for actions brought thereunder the statute of limitations governing actions brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA). *See* 29 U.S.C. § 626(e)(1). Consequently, an ADEA action must be "commenced with two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action occurred." 29 U.S.C. § 255(a).

The Union asserts that, under *Lorance v. A.T. & T. Technologies, Inc.,* — U.S. —, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), the cause of action in this matter accrued in 1982, when the City Colleges adopted the early retirement program, and thus was time barred, even if characterized as a "willful violation," at the time the EEOC brought this action in 1988. The court agrees.[9]

In *Lorance,* three women brought a Title VII action challenging a seniority system which distinguished between plant-wide and intra-department seniority and operated to the detriment of the women who had greater plant-wide seniority, but lesser intra-department seniority than many of the men in their historically male dominated department. 109 S.Ct. at 2262–64. Under Title VII it is not "an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions or privileges of employment pursuant to a bona fide seniority or merit system ... provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex or national origin ..." 42 U.S.C. § 2000e–2(h). Thus, "absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has come discriminatory consequences." 109 S.Ct. at 2265 *quoting TransWorld Airlines, Inc. v. Hardison,* 432 U.S. 63, 82, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977). The plaintiffs in *Lorance* contended that, although it was facially nondiscriminatory, the discriminatory consequences of the seniority system were the result of an intention to discriminate against women. 109 S.Ct. at 2264.

Addressing whether the plaintiffs' EEOC charge of discrimination was untimely, the Court concluded that assessing timeliness requires the court to precisely identify the alleged unlawful employment practice. *Id.; citing Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). In *Lorance,* the alleged unlawful employment practice was the *alteration* of the seniority system to distinguish between plant-wide and intra-department seniority. Consequently, it was the alteration of the seniority plan which triggered the running of the limitations period. 109 S.Ct. at 2268. Since this occurred in 1979, the plaintiffs' EEOC charge of discrimination filed in 1983 was well outside the limitations provided in title VII, 42 U.S.C. § 2000e–5(e). 109 S.Ct. at 2265–2268. However, the Court did distinguish the case before it from one involving a facially discriminatory seniority system.

---

**8.** The EEOC also contends that the City Colleges' early retirement program results in involuntary retirement, rendering it non-exempt from ADEA scrutiny. *See* 29 U.S.C. 623(f). It cites *Betts* on remand. Yet, *Betts* is distinguishable, because, based upon the 6th Circuit's conclusion on remand, it involved a situation where the employee was involuntarily retired. 897 F.2d 1380 (6th Cir.1990). Specifically, Betts was forced to retire due to a legitimate reason not based on age and then forced to accept a less desirable retirement plan because of her age. Such is not the case here. Apparently, the difference between a carrot and a stick is in the eye of the beholder.

**9.** Thus, the court need not reach the laches issue.

"There is no doubt, of course, that a facially discriminatory seniority system (one that treats similarly situated employees differently) can be challenged at any time,...." 109 S.Ct. at 2269, n. 5.

The EEOC advances three arguments to avoid the application of *Lorance:* (1) this action is brought under the ADEA and not title VII; (2) this action involves an early retirement program and not a seniority system; and (3) the challenged early retirement program, unlike the seniority system in *Lorance,* is discriminatory on its face and may be challenged at any time. The first two arguments are really related and may be overcome with relative ease. The third argument requires greater consideration.

That *Lorance* involved Title VII and a seniority system, rather than the ADEA and an early retirement program, does not serve to distinguish it. Courts engaged in the process of statutory interpretation often analogize provisions of different anti-discrimination acts, such as the ADEA and Title VII, to each other. These anti-discrimination acts while focusing upon different "protected classes" or characteristics are quite similar. Often the provisions of one are derived from another. Illustrative of both of these points is *Betts,* where the Court specifically noted that its interpretation of § 623(f)(2) of the ADEA was "supported by ... [its] ... long standing interpretation of the analogous provision of Title VII, the statute from which 'the prohibitions of the ADEA were derived *in haec verba*'." 109 S.Ct. at 2868 *quoting Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *see also Sofferin v. American Airlines, Inc.,* 713 F.Supp. 1219, 1225 (N.D.Ill.1989) (considering interpretation of nearly identical deferral provisions of ADEA in ruling on timeliness of filing of EEOC charge in an EEOC deferral state). Moreover, statutes addressing different evils are often modeled after one another. Thus, even where the purposes of two statutes are not so similar, the Supreme Court has not hesitated to rely upon the prior interpretation of one in ruling upon another. *See Lorance,* 109 S.Ct. at 2267 ("we have often observed that the NLRA was the model for Title VII's remedial provisions, and have found cases interpreting the former persuasive in construing the latter. (Citations omitted).") Considering that *Lorance* followed a rule which originated in the context of an NLRA action, it is difficult to accept the argument that its rationale is such that the rule's application should be restricted to Title VII actions. Rather, its rationale applies with equal force to the challenge of all employment plans or systems.

Thus, the EEOC's arguments plainly fail to provide any justification for not applying to this case the rule announced in *Lorance,* that, with respect to a facially nondiscriminatory employment plan or system, the allegedly discriminatory act which starts the running of limitation periods is the adoption of the employment plan or system. Having determined that the rule announced in *Lorance* is applicable to this ADEA action, the next issue is whether the exception created by the *Lorance* Court's observation that a facially discriminatory seniority system may be challenged at any time has any application to early retirement plans.

There is no question that a seniority system which assigns a greater level of seniority to men than women with the same amount of service with the employer is discriminatory on its face. In fact, the court can conceive of no legitimate reason to consider any of the characteristics—race, color, religion, sex or national origin—enumerated in Title VII, 42 U.S.C. § 2000e–2, in calculating an individual employee's seniority or eligibility for any type of compensation or benefit. Section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h), recognizes that, among other things, given the more recent entry into the work force in significant numbers of different "groups," a nondiscriminatory seniority system may have consequences which do not exactly cut evenly across racial, sexual, religious and ethnic lines. In any event, whether a seniority system is facially discriminatory under Title VII will be self-evident.

This would not necessarily be the case with respect to an early retirement plan. Early retirement plans, though they often

also require an individual to have accumulated a certain minimum number of years of service to be eligible for early retirement, determine whether an individual is entitled to take advantage of an early retirement plan based primarily upon an individual employee's age. The court can conceive of no early retirement plan which would not be based upon age. Yet, the purpose of the ADEA is to prevent discrimination based upon age.

Thus, unlike the other characteristics enumerated in Title VII, age is unique because age as a defining characteristic is necessarily utilized in the design and implementation of an accepted employment practice—early retirement programs. *See United Air Lines v. McMann,* 434 U.S. 192, 207, 98 S.Ct. 444, 452, 54 L.Ed.2d 402 (1977) (J. White concurring) ("all retirement plans necessarily make distinctions based upon age"). Section 623(f)(2) is a recognition of this necessity and eliminates any basis for the argument that all early retirement plans are technically facially discriminatory.

The question then is under what circumstances, if any, is an early retirement plan facially discriminatory under the ADEA? Or, to further refine it, can a difference in early retirement benefit level eligibility, related to age, be actionable under the ADEA, absent evidence of an intent to discriminate in some nonfringe-benefit aspect of the employment relation?

■ The court concludes that an early retirement plan is not facially discriminatory, and subject to challenge at any time, merely because it provides different benefit levels related to age. Under § 623(f)(2), as interpreted in *Betts,* a *bona fide* early retirement plan is subject to challenge only where it is a subterfuge, because there is evidence of an intent to discriminate in nonfringe-benefit terms and conditions of employment. An early retirement plan which discriminates on its face is also a subterfuge. However, an early retirement plan is not facially discriminatory merely because it makes age-related distinctions in benefits available to eligible employees. This conclusion is supported by the Su-

preme Court's pronouncement that under the interpretation of the ADEA it was adopting:

> age-based restrictions in the employee benefit plans covered by § 4(f)(2) do not constitute the "arbitrary age discrimination in employment that Congress sought to prohibit in enacting the ADEA. Instead, under this construction of the statute, Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment.

*Betts,* 109 S.Ct. at 2865.

In referring to those "aged based restrictions in employee benefit plans ... which do not constitute 'arbitrary age discrimination' ...," the *Betts* Court did not mean only those restrictions based upon differentiations between those within and without the protected class defined by one's fortieth and seventieth birthday. The *Betts* Court was confronted with a seniority system which differentiated in benefits available to employees eligible for early retirement to the detriment of older eligible employees. It was referring to the very aged based distinctions in early retirement benefit eligibility that are found in the City Colleges' plan.

The *Betts* Court did state that "[a]ny benefit plan that by its terms mandated discrimination against older workers would also be facially irreconcilable with the prohibitions of ... [§ 623(a)]," 109 S.Ct. at 2866, and would be a subterfuge. *Id.* However, given that the early retirement plan under scrutiny in *Betts* made age-based distinctions in benefits, it is not likely that early retirement plans which make age-based distinctions in benefits are examples of benefit plans which are "facially irreconcilable" with the ADEA because they "mandate[ ] discrimination against older workers." *Id.* Otherwise, the Court's subterfuge analysis would have taken a different tact and it need not have remanded.

Finally, as this court interprets *Lorance,* the limitations periods which govern challenging any facially nondiscriminatory em-

ployment plan or system begin to run at the time of the plan or systems' enactment. While the *Lorance* Court acknowledged that a facially discriminatory seniority system may be challenged at any time, and this rationale too applies to all employment plans or systems, as this court interprets *Betts*, an early retirement plan is not facially discriminatory under the ADEA merely because it makes age-based distinctions in benefits among eligible employees.

Therefore, the limitations periods governing the time to challenge the City Colleges' early retirement plan began to run in 1982, at the time of its adoption, and have long since expired.

Accordingly, the City Colleges' motion for summary judgment is granted.

IT IS SO ORDERED.