944 F.2d 339
 56 Fair Empl.Prac.Cas. (BNA) 1361,
57 Empl. Prac. Dec. P 41,032, 60 USLW 2199,
69 Ed. Law Rep. 1054,
14 Employee Benefits Cas. 1662
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
CITY COLLEGES OF CHICAGO, Board of Trustees of Community
College District 508 and Cook County College
Teachers' Union Local 1600, AFT,
AFL-CIO, Defendants-Appellees.
 No. 90-3162.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 7, 1991.
Decided Sept. 16, 1991.
As Corrected Sept. 17, 1991.
 
 Sharon A. Seeley, John P. Rowe, Jason S. Hegy, Steven L. Brenneman, E.E.O.C., Chicago, Ill., Paul D. Ramshaw (argued), E.E.O.C., Washington, D.C., for plaintiff-appellant E.E.O.C.
 Thomas E. Johnson, argued, Chicago, Ill., for defendants-appellees City Colleges of Chicago and Bd. of Trustees of Community College Dist. 508.
 Gilbert Feldman, argued, Cornfield & Feldman, Chicago, Ill., for defendant-appellee Cook County College Teachers' Union Local 1600, AFT, AFL-CIO.
 Before WOOD, Jr., and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 MANION, Circuit Judge.
 
 
 1
 This appeal requires us to determine when the statute of limitations commences for a suit challenging an early retirement plan allegedly adopted as a subterfuge to discriminate on the basis of age. The district court held that a suit the EEOC filed in 1988 challenging an early retirement plan adopted by City Colleges of Chicago in 1982 was untimely because the ADEA's two-year statute of limitations began to run when the plan was adopted.[1] 740 F.Supp. 508. We agree, and therefore affirm.
 
 
 2
 In 1982, City Colleges and its faculty's union signed a new collective bargaining agreement. Included in that agreement was an early retirement plan for faculty members aged 55 to 70 which contained two provisions relevant to this action. The plan's first relevant feature concerns lump sum payments to retirees. The plan provided that faculty members between the ages of 55 and 58 were entitled to receive upon retirement a lump sum payment equal to 50 percent of the member's accumulated sick leave computed at the member's final base rate of pay; 59-year-old retirees were entitled to receive 60 percent, and 60-to-64-year-old retirees were entitled to receive 80 percent. However, 65-to-70-year-old retirees were entitled to receive only 45 percent of their accumulated sick pay. The early retirement plan's second relevant feature is that retirees between the ages of 55 and 64 continue to be covered under City Colleges' group insurance coverage until age 70; 65-year-old and older retirees are not covered by the policy, although they may continue to purchase insurance through the City Colleges' policy.
 
 
 3
 In 1984, two faculty members sued City Colleges and the Union (to whom we will refer collectively as City Colleges), alleging that the early retirement plan violated the ADEA. One more faculty member (out of about 100 who had the option of joining the case) later joined the suit. The district court found that the retirement plan did not violate the ADEA but this court reversed that ruling. See Karlen v. City Colleges of Chicago, 837 F.2d 314 (7th Cir.1988). Although the EEOC was apprised of the Karlen suit's progress, and was invited by the plaintiff's attorney to participate in the appeal, it made no effort to participate in the Karlen case in either the trial court or this court. But after this court ruled in the plaintiffs' favor in Karlen, the EEOC became engaged. In August 1988, the EEOC first alleged that City Colleges' early retirement plan violated the ADEA; in December 1988, the EEOC filed this suit.
 
 
 4
 While the EEOC's suit was pending, the Supreme Court issued two decisions having a significant bearing on the EEOC's case. In Lorance v. AT & T Technologies, Inc., 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), the Supreme Court held that the statute of limitations for a suit challenging a facially neutral seniority system that in operation discriminated against women commenced when the employer adopted the discriminatory system and not when the system's operation caused the plaintiffs to be demoted from their jobs. The plaintiffs in Lorance had been employees at AT & T's Montgomery Works plant in 1979, when AT & T and the employees' union adopted a collective bargaining agreement that changed the method of calculating seniority for "testers" at the plant. Before 1979, testers, like all plant employees, accrued seniority based on years spent in the plant. Under the new agreement, testers' seniority was determined by time spent as a tester rather than total time at the plant. Id. at 901-02, 109 S.Ct. at 2263-64.
 
 
 5
 In 1982, the plaintiffs, who were all by then testers, were demoted because of their low seniority under the 1979 agreement. The plaintiffs would not have been demoted under the old seniority system. The plaintiffs filed a complaint with the EEOC. After receiving a right to sue letter, plaintiffs sued under Title VII, claiming that AT & T adopted the 1979 seniority system with the intent to discriminate against women. Id. at 902-03, 109 S.Ct. at 2264. The Supreme Court held the plaintiffs had not filed their administrative complaints with the EEOC within the relevant 300-day time limit, even though the plaintiffs had filed their complaints within 300 days of their demotions.
 
 
 6
 Section 703(h) of Title VII, 42 U.S.C. § 2000e-2(h), provides that it is not "an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions or privileges of employment pursuant to a bona fide seniority ... system ... provided that such differences are not the result of an intent to discriminate...." Therefore, "absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." Lorance, 490 U.S. at 905, 109 S.Ct. at 2265. Assessing when a statute of limitations begins to run requires a court to identify precisely the alleged unlawful employment practice. Id. Since the discriminatory effects of a facially neutral seniority system do not violate Title VII unless the system was adopted with discriminatory intent, the discrimination occurred when AT & T adopted the new seniority system. Id. at 904, 109 S.Ct. at 2264. A statute of limitations begins to run at " 'the time of the discriminatory acts, not [at] the time at which the consequences of the acts become most painful.' " Id. at 907, 109 S.Ct. at 2266 (quoting Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)). Consequently, since the only "discriminatory" act in Lorance was the adoption of the seniority system, the statute of limitations began to run at the time AT & T adopted the system, and not when the system resulted in the plaintiffs' demotions.
 
 
 7
 Shortly after deciding Lorance, the Court decided Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). In Betts, a retirement system provided that only employees under age 60 could receive disability retirement benefits. The plaintiff in Betts was 61 years old when her employer decided her failing health prevented her from adequately performing her job. The plaintiff retired but because she was over 60 she could not receive disability retirement benefits and had to settle for lesser benefits. Id. at 163-64, 109 S.Ct. at 2858-59.
 
 
 8
 The plaintiff sued, alleging the retirement plan violated the ADEA. The employer argued that the plan did not violate the ADEA by virtue of 29 U.S.C. § 623(f)(2) which, similar to § 703(h) of Title VII regarding seniority systems, provides that it is not unlawful
 
 
 9
 to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of [the ADEA] except that no such employee benefit plan shall excuse the failure to hire any individual and no such employee benefit plan shall require or permit the involuntary retirement of any individual ... because of ... age....
 
 
 10
 The EEOC, and several courts including this one in Karlen, had interpreted § 623(f)(2) to require that age-based differences in benefits were lawful only if those differences were justified by the increased cost of providing those benefits to older employees. See Betts, 492 U.S. at 169-70, 109 S.Ct. at 2862; Karlen, 837 F.2d at 319. Betts rejected this interpretation of § 623(f)(2) as inconsistent with the statute. Instead, a benefit plan that varies benefits by age is illegal only if the plaintiff shows it is a subterfuge--that is, only if the plaintiff shows the employer adopted it with the intent to discriminate against older employees regarding hiring, firing, compensation, or some other nonfringe-benefit term and condition of employment. See Betts, 492 U.S. at 170-180, 109 S.Ct. at 2862-68. According to Betts, "Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment." Id. at 177, 109 S.Ct. at 2866.[2]
 
 
 11
 After the Court decided Betts and Lorance, City Colleges moved for summary judgment, arguing that the early retirement plan did not violate the ADEA because it was not a subterfuge to discriminate against older employees regarding nonfringe-benefit terms and conditions of employment and, in any event, that the ADEA's suit was time-barred under Lorance. The district court held that a genuine issue of fact remained concerning City Colleges' intent in adopting the retirement plan. But the court granted summary judgment for City Colleges anyway, holding that the EEOC's suit was time-barred under Lorance. The court reasoned that thanks to Betts, City Colleges' retirement plan did not violate the ADEA on its face, despite the age-based distinctions it made, because age-based distinctions in employee benefit plans do not necessarily violate the ADEA. Instead, just as the illegality of the seniority system in Lorance depended on a finding that the employer adopted it with the intent to discriminate, the illegality of City Colleges' retirement plan depended on City Colleges' intent at adoption that the plan be a means of discriminating against older employees regarding some nonfringe-benefit aspect of the employment relationship. Therefore, the court concluded, the relevant discriminatory act in this case, as it was in Lorance, was the plan's adoption. Since the two-year statute of limitations begins to run at the time of the discriminatory act, the EEOC's suit filed more than two years after City Colleges adopted the retirement plan was untimely.
 
 
 12
 The EEOC appeals. Its most substantial argument builds on an exception the Supreme Court noted to the rule it applied in Lorance. In Lorance, the Court distinguished between facially neutral seniority systems and seniority systems that discriminate on their face, for example, a system "that assigns men twice the seniority women receive for the same amount of time served." Lorance, 490 U.S. at 912 n. 5, 109 S.Ct. at 2269 n. 5. A plaintiff may challenge a facially discriminatory seniority system at any time because such a system "by definition discriminates each time it is applied." Id. The EEOC argues that City Colleges' retirement system comes within this exception to Lorance because it expressly provides lesser benefits for older workers and is therefore facially discriminatory.
 
 
 13
 Lorance teaches that to determine when the statute of limitations begins to run, a court must identify the precise violation at issue. As the Court noted in Lorance, a facially discriminatory seniority system violates Title VII each time it is applied because each application treats men and women differently in a way Title VII does not allow. As the Supreme Court interpreted § 623(f)(2) in Betts, however, it does not violate the ADEA to make age-based distinctions in paying fringe benefits. "[A]ge-based restrictions in the employee benefit plans covered by § (f)(2) do not constitute the 'arbitrary age discrimination in employment' that Congress sought to prohibit in enacting the ADEA." Betts, 492 U.S. at 177, 109 S.Ct. at 2866. Fringe-benefit plans that make age-based distinctions violate the ADEA only if adopted with a specific intent to discriminate in a nonfringe area of employment. Consequently, as in Lorance, because the legality of City Colleges' early retirement plan "is wholly dependent on the alleged illegality of signing the underlying [collective bargaining] agreement, it is the date of that signing which governs the limitations period." Lorance, 490 U.S. at 911, 109 S.Ct. at 2268.
 
 
 14
 Because § 623(f)(2) provides that it is not unlawful "to observe the terms of ... any bona fide employee benefit plan" that is not adopted as a subterfuge, one could argue that an employer violates the ADEA every time it does observe the terms of a plan that is adopted as a subterfuge. Consequently, each time the employer observes (applies) the plan, a new violation occurs that triggers the limitations period. The problem with this argument is that the Supreme Court could have said the same thing in Lorance. The relevant language of 42 U.S.C. § 2000e-2(h) makes it lawful "to apply different standards ... pursuant to a bona fide seniority ... system...." It is reasonable to conclude from this language that if a facially neutral seniority system was adopted with discriminatory intent, a new violation occurs--and the limitations period begins to run--every time the employer applies the standards that result from the discriminatory system. The Court in Lorance, however, rejected this approach, instead holding that only the system's original adoption, not each application of different standards resulting from the system, was the relevant act that triggered the statute of limitations. See generally Lorance, 490 U.S. at 906-09, 109 S.Ct. at 2265-67. Lorance thus rejects the assertion that a new limitations period begins with each application of an employee benefit plan that is illegal because it was adopted with discriminatory intent.
 
 
 15
 The EEOC's backup argument is that for policy reasons, Lorance should be limited to challenges to facially neutral seniority systems under Title VII. According to the EEOC, the Supreme Court in Lorance stressed that Title VII accords seniority systems "special treatment." See Lorance, 490 U.S. at 911, 109 S.Ct. at 2268-69 (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 81, 97 S.Ct. 2264, 2275, 53 L.Ed.2d 113 (1977)). This is so because employees "work--perhaps for many years--in reliance upon the validity of a facially lawful seniority system." Id. at 912, 109 S.Ct. at 2269. If plaintiffs may challenge a facially neutral seniority system long after the system's adoption, they may disrupt the "settled (and worked for) expectations" of their fellow employees who had been relying on the facially neutral system for all that time. See id.
 
 
 16
 We have suggested that Lorance may have been "special," its result depending more on the "importance that workers attach to the stability of their seniority rights" than the application of limitations law principles. Davidson v. Board of Governors, 920 F.2d 441, 443 (7th Cir.1990); Webb v. Indiana National Bank, 931 F.2d 434, 438 (7th Cir.1991). But we have never actually held that Lorance should be limited to Title VII suits challenging seniority systems and we refuse to do so now. For one thing, just as Title VII accords seniority systems special treatment, the ADEA as interpreted in Betts accords employee benefit plans similar special treatment. And workers also rely on the validity of early retirement programs, just as they rely on the validity of seniority systems. Early retirement is a valued contractual right, something many employees work for and look forward to. A suit challenging an early retirement system could result--as this suit did--in an employer's decision to scuttle its early retirement plan rather than face more litigation and greater potential liability. This would deprive long-term employees of a valuable benefit they had every right to expect to receive.
 
 
 17
 More fundamentally, while the Court in Lorance used the special considerations surrounding seniority systems to support the result it reached, see 490 U.S. at 911-12, 109 S.Ct. at 2268-69, the Court's decision did not depend on those special considerations. Instead, the Court premised its decision on the general principle that determining when a statute of limitations begins to run depends on identifying the precise violation at issue, a principle developed in cases involving suits under such diverse statutes as Title VII, 42 U.S.C. § 1983, and the National Labor Relations Act. See id. at 904, 906, 109 S.Ct. at 2264-65, 2266 (citing Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)), 490 U.S. at 907 & n. 3, 109 S.Ct. at 2266 & n. 3 (citing Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981)), 490 U.S. at 909-11, 109 S.Ct. at 2267-69 (citing Machinists v. NLRB, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960)). As the district court noted, it is common for courts interpreting provisions of one statute to analogize to similar provisions in other statutes. The Court, in fact, expressly employed this type of analysis in both Lorance and Betts. See Lorance, 490 U.S. at 909, 109 S.Ct. at 2267 (justifying reliance on Machinists v. NLRB by observing that "the NLRA was the model for Title VII's remedial provisions, and we have found cases interpreting the former persuasive in construing the latter"); Betts, 492 U.S. at 181-82, 109 S.Ct. at 2868-69 (supporting its interpretation of 29 U.S.C. § 623(f)(2)'s treatment of employee benefit plans by analogizing that provision to 42 U.S.C. § 2000e-2(h)'s treatment of seniority systems). Given that Lorance involved application of a principle derived from cases involving challenges to different activities under several different statutes, we see no reason for confining Lorance to Title VII suits challenging seniority systems.
 
 
 18
 The statute of limitations in this case began to run in 1982, when City Colleges adopted its early retirement plan. Because the EEOC did not file its suit until 1988, long after the ADEA's two-year limitations period had run, its suit was time-barred. Therefore, we affirm the district court's grant of summary judgment for the defendants.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 29 U.S.C. § 626(e) adopts the statute of limitations from the Fair Labor Standards Act, 29 U.S.C. § 255. Section 255 provides that a plaintiff may commence a suit within two years after his cause of action accrued, or three years if the violation was willful. The EEOC did not allege a willful violation so only the two-year period applies in this case, though the difference between the two- and three-year periods makes no difference to the result here
 
 
 [2]
 Congress in 1990 passed the Older Workers Benefit Protection Act, Pub.L. 101-433, 104 Stat. 978-83, which overturned the Court's decision in Betts. Congress gave the Act prospective effect only, however, and it does not apply in this case. See id. § 105