Sydney J. SNAIR, et al., Plaintiffs,

v.

**CITY OF CLEARWATER,**
**et al., Defendants.**

No. 88–889–Civ–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

March 17, 1992.

---

Edward Everett Fessenden, Jr., Tampa, Fla., Kenneth M. Willner, Paul F. Mickey, Jr., David Goldberg, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Allen M. Blake, Blake, Casella & McMichael, Bradenton, Fla., for plaintiffs.

Mark A. Hanley, Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Deborah Susan Crumbley, Tampa, Fla., for defendants.

## ORDER ON MOTIONS

KOVACHEVICH, District Judge.

Plaintiffs for and on behalf of all others similarly situated, brought this action for age discrimination pursuant to The Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. § 621 *et seq.*). This action also includes claims for age discrimination brought under the Fourteenth

Amendment to the United States Constitution; Article III, section 2, of the Florida Constitution; the Florida Age Discrimination in Employment Act (FL–ADEA) (§ 112.044, Fla.Stat.); and the Florida Human Rights Act of 1977 (FHRA) (§ 760.10, Fla.Stat.). The original Complaint in this action was filed on June 21, 1988, with an Amended Complaint filed November 1, 1988, and a Second Amended Complaint filed September 13, 1989. The Equal Employment Opportunity Commission (EEOC) also filed suit against the City, alleging violations of the ADEA, on August 1, 1988.[1]

The action is before the Court on the following Motions and Responses:

1. Defendants' motion for partial summary judgment as to Plaintiff Snair's claim under the ADEA and all opt-in Plaintiffs to Snair's suit. (Docket # 94)

2. Plaintiffs' memorandum in opposition to Defendants' motion for partial summary judgment as to Plaintiff Snair's claim under the ADEA and all opt-in Plaintiffs to Snair's suit. (Docket # 116)

3. Defendants' reply to Plaintiffs' memorandum in opposition to partial summary judgment as to Plaintiff Snair's claim under the ADEA and all opt-in Plaintiffs to Snair's suit. (Docket # 125)

4. Defendants' motion to dismiss all opt-in Plaintiffs, and to strike all notices of opt-in after the EEOC filed suit. (Docket # 102)

5. Plaintiffs' memorandum in opposition to Defendants' motion to dismiss all opt-in Plaintiffs and to strike all notices of opt-in after the EEOC filed suit. (Docket # 117)

6. Defendants' motion for summary judgment as to all claims contained in the Second Amended Complaint. (Docket # 96)

---

1. The EEOC and the City executed a notice of dismissal pursuant to Fed.R.Civ.P. 41(a)(1) on

December 16, 1990.

7. Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment as to the claim based on the ADEA. (Docket # 118)

8. Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment as to the claims based on the Equal Protection Clauses of both the United States and Florida Constitutions and in support of Plaintiffs' summary judgment motion as to the same claims. (Docket # 113)

9. Defendants' memorandum in opposition to Plaintiffs' motion for summary judgment as to the Equal Protection clauses of both the United States and Florida Constitutions. (Docket # 122)

10. Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment as to the claim based on the FHRA, and in support of Plaintiffs' summary judgment motion as to the same claim, filed on October 10, 1991.

11. Defendants' memorandum in opposition to Plaintiffs' motion for summary judgment as to the claim based on the FHRA. (Docket # 123)

12. Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment as to the claim based on the FL-ADEA, and in support of Plaintiffs' summary judgment motion as to the same claim, filed on October 10, 1991.

13. Defendants' memorandum in opposition to Plaintiffs' motion for summary judgment as to the claim based on the FL-ADEA. (Docket # 124)

14. Defendants' motion for summary judgment as to Plaintiff American Association of Retired Persons (AARP). (Docket # 100)

15. Plaintiffs' memorandum in opposition to Defendants' motion for summary judgment as to Plaintiff AARP. (Docket # 114)

16. Plaintiffs' motion for oral argument on Plaintiffs' motion for summary judgment and Defendants' motion for summary judgment. (Docket # 102).

## STATEMENT OF FACTS

In 1945, the Florida Legislature created, by Special Act, a mandatory pension plan for employees of the City of Clearwater. Known as the City of Clearwater Employees' Pension Fund (hereinafter "the pension plan"), it excluded from participation "all persons employed by the City of Clearwater after January 1, 1945, who shall at the time of hire be over the age of forty-five (45) years." The pension plan became a City Ordinance by operation of law in 1973 when the Legislature enacted the "Municipal Home Rule Powers Act." § 166.021(5), Fla.Stat.[2]

The pension plan is mandatory, and provides that all qualified employees must join. Participants in the pension plan are not covered by Social Security, and no Social Security payments are made by either the participants or the City on their behalf. The pension plan underwent only minor modifications between 1945 and 1976. In 1976, the pension plan continued to provide both pension and disability benefits to its members. The pension plan in effect in 1976 provided that a participant in the plan could retire and receive benefits if he or she (a) had worked for the City for 30

---

**2.** The City's pension plan is a defined benefit plan. It pays retiring City employees a benefit calculated on the basis of their years of service multiplied by a percentage of the average salary they received during their last five years of employment. A defined benefit plan contrasts with a defined contribution plan, in which an employee's benefits are determined on the basis of the pension fund's assets at the time when the benefit is paid. The pension plan is funded on a yearly basis. Each year, the City hires an actuary to determine the total contribution the City must make to the pension plan in order for it to remain solvent. The City then contributes a lump sum to the plan. The City does not make any contribution to the pension plan, nor is the lump sum contributed by the City calculated on the basis of individual participants' funding requirements.

years; (b) had worked for the City in a hazardous position for 20 years; (c) had become permanently incapacitated in the line of duty; (d) had worked for the City for 10 years and become permanently incapacitated outside the line of duty; or (e) reached the age of 55 and had worked for the City for 20 years. The pension plan did not provide for receipt of benefits prior to 20 years of service, except in the case of incapacity.

In 1976 and 1977, the Clearwater City Commission approved several amendments to the pension plan.[3] These amendments became effective as City Ordinance No. 1648 in 1978.[4] Only one of the amendments involved the specific language of the age–45 exclusion. That amendment changed the exclusionary language in the pension plan from "over the age of forty-five (45)" to "age forty-five or older or who has failed to pass a comprehensive medical examination." However, in addition to changing the language of the age–45 exclusion, the 1978 amendments to the pension plan increased the average salary utilized to determine benefits from two percent (2%) to two and one-half percent (2.5%). The amendments also increased employee contributions to the pension plan from three percent (3%) to six percent (6%), plus an optional two percent (2%) which could be required by the pension plan's trustees.[5] Further, the amendments provided that employees' pension rights would vest after 10 years of service, as opposed to 20 years under the original plan. In 1981, the plan was again amended to allow employees who participated in the Firefighters' Pension Fund to transfer from that plan to the City's pension plan, which is the subject of this litigation.

Beginning in approximately 1980, several current and former City employees began filing charges of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that the pension plan discriminated on the basis of age. In September 1980, Phillip J. Bennis filed a discrimination charge with the EEOC alleging that the pension plan violated the ADEA by refusing to admit him since he was over 45 years of age when hired. In June 1981, the EEOC determined that the City had discriminated against Bennis in violation of the ADEA by refusing to permit him to participate in the pension plan because of his age. In 1985, Alton West filed a discrimination charge with the EEOC based on the same age–45 exclusion in the pension plan. Again the EEOC ruled that the pension plan violated the ADEA.

The City's consistent response to the allegations of discrimination under the age–45 exclusion was to assert that since its plan was created 22 years prior to the enactment of the ADEA, and 29 years prior to the ADEA's application to local governments,[6] it was not a subterfuge to evade the ADEA's requirements. Thus the pension plan was entitled to the exemption contained in section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2). Section 623(f) states:

> It shall not be unlawful for an employer, employment agency, or labor organization ... (2) to observe the terms of a bona fide seniority system of any bona fide employee benefit plan such as a retirement, pension or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no

---

3. In 1988, the City voluntarily removed the age–45 restriction.

4. Similar amendments to the ordinance were attempted in 1977. However, the implementing ordinance was not self-executing; it required ratification by referendum. In February 1977, the voters approved the ordinance by referendum, but it was subsequently declared void because it had been improperly advertised, under Florida Statutes, section 166.041. The 1978 ordinance was intended to ratify the 1977 ordinance and implement the changes approved in 1976 and 1977.

5. The Trustees exercised the two percent (2%) option in 1978, thereby increasing employee contributions to a total of eight percent (8%).

6. The ADEA was enacted in 1967. It became applicable to public employers in 1974, after the Supreme Court's decision in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). PL 93–259, § 28(a)(2), codified at 29 U.S.C. § 630(b).

such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.

Plaintiff Snair was hired by the City in 1972. At his time of hire, Snair was 49 years old, and thus excluded from participation in the pension plan. In 1986, Snair filed an age discrimination charge against the City with the EEOC. In 1987, the EEOC issued a Letter of Violation to the City, stating that its pension plan violated the ADEA. On June 21, 1986, Snair initiated this litigation. On October 17, 1988, Plaintiffs filed an Amended Complaint to include John Wood, Joan Wright and the AARP as named Plaintiffs in the lawsuit.[7] In addition, over 100 individuals have joined the action by filing notices of consent with this Court.[8]

## SUMMARY JUDGMENT STANDARD

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983) All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979) (quoting *Gross v. Southern Railway Co.*, 414 F.2d 292 (5th Cir.1969)). Factual disputes preclude the granting of a motion for summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552.

The Court also said, "Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by their own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a[t least one] genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.

To withstand Defendants' Motion for Summary Judgment, Plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. According to Plaintiffs' Second Amended Complaint, the complaint in this cause is brought under the Age Discrimination in Employment Act of 1967 (ADEA),[9] the Fourteenth Amendment to the United States Constitution, Article I § 2 of the Florida Constitution, The Florida Age Discrimination in Employment Act (FL–ADEA),[10] and the Florida Human Rights Act of 1977 (FHRA).[11] Plaintiff alleges two Federal claims: 1) Defendants' actions in maintaining and administering the age limitation for participation in the City's Employees' Pension Fund constituted a willful violation of the ADEA, and 2) the exclusion of those age 45 or older at the time of hire from participation in the City's Employees' Pension Fund denied those individuals equal protection under the law in violation

---

**7.** At the time of filing the Second Amended Complaint, both Wood and Wright were still employed with the City.

**8.** Rule 23 class actions are not authorized by the ADEA. Instead, the ADEA adopts the procedures governing representative actions as set forth in the Fair Labor Standards Act (FLSA), codified at 29 U.S.C. § 216(b). The FLSA representative action procedure requires that each party plaintiff file a written consent with the

court in order to "opt-in" to the action. Section 216(b) is incorporated by reference into the ADEA in 29 U.S.C. § 626(b).

**9.** 29 U.S.C. § 621 *et seq.*

**10.** Florida Statutes § 112.044 (1991).

**11.** Florida Statutes § 760.10 (1991).

of the Fourteenth Amendment to the Constitution of the United States. In addition, Plaintiff alleges three pendant state law claims: (1) the exclusion of those age 45 or older at the time of hire from participation in the City's Employees' Pension Fund denied those individuals equal protection under the law in violation of Article I § 2 of the Florida Constitution; (2) Defendants' actions in maintaining the age limitation so as to preclude certain employees from participating in the City's Employees' Pension Fund constituted a willful violation of the FL–ADEA; and (3) the City's exclusion of Plaintiffs and all others similarly situated from the City's Employees' Pension Fund on the basis of age, violated the FHRA.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF SNAIR AND ALL OPT–IN PLAINTIFFS TO SNAIR'S SUIT

In order to bring an action pursuant to the ADEA, a plaintiff must comply with two time requirements. First, an individual must file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) pursuant to 29 U.S.C. § 626(d). If the plaintiff resides in a deferral state, such as Florida,[12] then the plaintiff must file the charge "within 300 days after the alleged unlawful practice occurred." § 626(d)(2). *See Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1528 n. 2 (11th Cir.1983), *cert. denied*, 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983); *Bean v. Crocker Nat'l Bank*, 600 F.2d 754 (9th Cir.1979). This 300–day time requirement applied to Plaintiff Snair's claim. Second, the plaintiff must comply with 29 U.S.C. § 626(e), which incorporates the statute of limitations of the Portal to Portal Act, 29 U.S.C. § 255. The statute of limitations under 29 U.S.C.A. § 255(d) is

two years, or three years for willful violations. *Kazanzas*, 704 F.2d at 1528. *See also Trumbull v. Health Care & Retirement Corp. of America*, 756 F.Supp. 532, 535 (M.D.Fla.1991). The question before the Court is whether Plaintiff Snair's claim is time-barred under § 255. Additionally, Defendants contend that if this Court finds that Plaintiff Snair's claim is time-barred, all plaintiffs who opted-in in his ADEA action are likewise time-barred.

■ Defendants cite *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), as support for the proposition that Snair's claim should be time-barred under either a two-year or three-year statute of limitations. *See also EEOC v. City College of Chicago*, 740 F.Supp. 508 (N.D.Ill.1990), *aff'd*, 944 F.2d 339 (7th Cir.1991). *Lorance* involved a Title VII claim against a seniority system which was not facially discriminatory.[13] The Court held that assessing the timeliness of such a claim requires a court to precisely identify the alleged unlawful practice. *Id.*, 109 S.Ct. at 2264. In *Lorance*, the alleged unlawful practice was the alteration of a seniority system. The Court held that it was this alteration that triggered the running of the limitations period. *Id.* at 2268.[14]

In *City College of Chicago*, the court applied the reasoning of *Lorance* to a claim of discrimination brought under the ADEA. The court noted that retirement plans are based primarily on age, thus the exemption in § 623(f)(2) is a recognition that all early retirement plans are not technically facially discriminatory. The court then held that "an early retirement plan is not facially discriminatory, merely because it makes age-related distinctions in benefits available to eligible employees." *Id.* at 516.

---

**12.** "Deferral states" are those which have state laws prohibiting age discrimination or which have created local agencies with authority to grant relief from unlawful employment practices.

**13.** Plans which are facially discriminatory may be challenged at any time while the plan is in effect. *See City College of Chicago*, 740 F.Supp. at 516–17.

**14.** *Lorance* involved a claim under Title VII, not the ADEA. However the provisions of Title VII and the ADEA have often been analogized to each other. *See Public Employees Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989) (the provisions of the ADEA were derived *in haec verba* from Title VII) (citing *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)).

Such a plan is subject to challenge only if it is a subterfuge because there is evidence of an intent to discriminate in some nonfringe benefit aspect of employment. *Id.*

 Defendants assert that the pension plan is not facially discriminatory under *Lorance* and *City College of Chicago.* Consequently, Plaintiffs' claim under the ADEA should be time-barred because, under *Lorance,* the 1978 amendment to the pension plan would have triggered the running of the statute of limitations, and claims filed in 1986 would be clearly beyond either the two-year or three-year limitations period. However, for the reasons set forth below, in Part II, this Court finds that the Plaintiffs have put forth evidence of a willful intent to discriminate on the part of the City. The three-year limitations period applies to the ADEA claim, and that limitations period did not begin to run until Snair's last day of employment.

 If an employer maintains a discriminatory policy, the continuation of the policy constitutes a continuing violation. The law is clear that the statute of limitations for a claim based on a continuing violation under the ADEA begins to run on the plaintiff's last day of employment, even if he remains on the payroll to receive accrued benefits. *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). *Ricks* held that "[m]ere continuity of employment, without more is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* 449 U.S. at 257, 101 S.Ct. at 504. *See also Naton v. Bank of California,* 649 F.2d 691, 694–95 (9th Cir.1981) (where complainant stayed on the payroll to receive separation pay for three and one-half months after his last day of work, statute of limitations for purposes of ADEA claim began to run from his last day of work); *Bonham v. Dresser Indus., Inc.,* 569 F.2d 187, 191 (3rd Cir.1977) (statute of limitations begins to run on employee's last day of employment, notwithstanding employee's continued receipt of certain employee benefits). A different rule would penalize a company for giving an employee periodic severance pay

or other extended benefits after the employment relationship has terminated. *Bonham,* 569 F.2d at 191.

Snair filed his Complaint on June 21, 1988. Thus, his termination of employment with the City must have occurred no earlier than June 22, 1986 in order to meet the two year statute of limitations. In two charges of discrimination filed with both the Florida Commission on Human Relations and the Clearwater Office of Community Relations, Snair stated that he retired in February 1986. Further, in his deposition testimony, Snair stated that he did not work for the City after February 13, 1986, although he stayed on the payroll until June 22, 1986 because he had "accrued enough sick leave, vacation time, whatever, to carry me on the payroll up through that date." [15] Plaintiffs have offered no substantial evidence to refute these statements. This evidence clearly demonstrates that Snair was fully aware that his last day of employment with the City was February 13, 1986. Thus, the statute of limitations for his ADEA claim began to run on February 13, 1986. Plaintiffs argue that conciliation between the City and the EEOC, pursuant to 29 U.S.C. § 626(b), tolled the statute of limitations for 39 days. Notwithstanding this possible tolling of the statute, Snair is time-barred with regard to the two-year statute of limitations. However, since Plaintiffs have put forth sufficient evidence of a willful violation, the ADEA claim is not barred under the three-year statute of limitations in § 255.

 Since the named Plaintiffs in the suit are not time-barred, neither are the Plaintiffs who have chosen to opt-in to the suit. The ADEA is a remedial statute, which should be liberally construed so as to give full recognition to its remedial aspect. *Durant v. Maher Chevrolet, Inc.,* 759 F.Supp. 787 (M.D.Fla.1991). The remedial provisions of the ADEA are best served by interpreting the opt-in provisions of 29 U.S.C. § 216(b) to provide for the joining of similarly situated individuals in a representative action as long as one named

---

**15.** See deposition of Snair, taken October 21, 1991, at page 22.

plaintiff has complied with the notice provisions of § 626(d). *Id.* at 789. *See also Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008 (7th Cir.1988); *Bean v. Crocker Nat'l Bank*, 600 F.2d 754 (9th Cir.1979). Since Plaintiffs have put forth sufficient evidence to raise an inference of discriminatory intent bringing the ADEA claim within the three-year statute of limitations, the claims of the opt-in plaintiffs are not time-barred.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE PLAINTIFFS' CLAIM BASED ON THE ADEA

### Subterfuge Under the ADEA

The facts of the claim pursuant to the ADEA constitute a case of first impression for this Circuit. Plaintiffs have alleged that the age–45 exclusion in the pension plan discriminates on the basis of age under § 623(a) and (j).[16] Section 623(a) provides:

It shall be unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

However, the statue further provides in § 623(f)(2) that it shall not be unlawful for an employer to "observe the terms of ... any bona fide employee benefit plan ... which is not a subterfuge to evade the purposes of this chapter."[17] Defendants argue that the pension plan cannot be a subterfuge to evade the purposes of the ADEA because it was adopted 22 years prior to the enactment of the ADEA, and thus, is entitled to the exemption in § 623(f)(2). Defendants further argue that, even if the modifications made to the pension plan in 1978 subject it to scrutiny by this Court, the Plaintiffs have not made a showing of an actual, subjective intent by

the City to discriminate in the nonfringe benefit aspects of employment.

In construing the exemption in § 623(f)(2), the United States Supreme Court has held that a retirement plan established prior to the enactment of the ADEA cannot be characterized as a subterfuge. In *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), the Court, interpreting a bona fide plan adopted in 1941, stated:

In the context of this statute [§ 623(f)(2)], "subterfuge" must be given its ordinary meaning and we must assume Congress intended it in that sense. So read, a plan established in 1941, if bona fide, cannot be a subterfuge to evade an Act passed 26 years later.

*Id.* at 434 U.S. 203, 98 S.Ct. 450.

The reasoning in *McMann* was reaffirmed by the Supreme Court in *Public Employees Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). *Betts* again held that "the term 'subterfuge' is to be given its ordinary meaning, and that as a result any employee benefit plan adopted prior to the enactment of the ADEA cannot be a subterfuge." *Id.* at 492 U.S. 168, 109 S.Ct. 2861. However, *Betts* specifically noted that *McMann* does not insulate from challenge a bona fide plan which, although adopted prior to the enactment of the ADEA, has been amended subsequent to the enactment of the ADEA. *Betts*, 492 U.S. at 168–70, 109 S.Ct. at 2862.

Also, *Betts* held invalid the EEOC's interpretive regulation construing the § 4(f)(2). The EEOC's regulation stated:

In general, a plan or plan provision which prescribes lower benefits for older employees on account of age is not a "subterfuge" within the meaning of section 4(f)(2), provided that the lower level of

---

**16.** The Complaint alleges a violation of § 623(i); however, this provision was recodified at 29 U.S.C. § 623(j) after passage of the Older Workers Benefits Protection Act, P.L. 101–433, codified at 29 U.S.C. §§ 623, 630 (1990).

**17.** All parties concede that the pension plan at issue is "bona fide," in that it "exists and pays benefits." *Betts*, 492 U.S. at 166, 109 S.Ct. at 2860 (citations omitted).

benefits is justified by age-related cost considerations.

29 C.F.R. § 1625.10(d) (1988).

The Court reasoned that the requirement that employers demonstrate a cost-based justification for age-related reductions in benefits appears nowhere in the ADEA itself. Thus the EEOC regulation could not stand.

The Court then analyzed the meaning of "subterfuge" with regard to "post-Act" plans and held that "§ 623(f)(2) is not so much a defense to a charge of age discrimination as it is a description of the type of employer conduct that is prohibited in the employee benefit plan context." *Betts*, 492 U.S. at 181, 109 S.Ct. at 2868. Thus, *Betts* held that:

> [W]hen an employee seeks to challenge a benefit plan provision as a subterfuge to evade the purposes of the Act, the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discrimination in some nonfringe-benefit aspect of the employment relation.

*Id.*

All parties agree that this Court is bound by the Supreme Court's decision in *Betts*, when considering Plaintiffs' federal ADEA claim. Defendants rely on the language reaffirmed in *Betts* that a plan adopted prior to the enactment of the ADEA cannot be a subterfuge. However, the pension plan at issue in this case, like the plan in *Betts*, was amended after the ADEA was made applicable to local governments, and is not automatically protected from scrutiny.

■ Before determining whether the pension plan may be a subterfuge to evade the purposes of the ADEA, it must be determined whether the 1978 amendments to the pension plan were sufficient to bring the plan within the purview of the Act.

■ Pension plans adopted prior to the enactment of the ADEA cannot be considered a subterfuge to evade the purposes of the Act. *Betts*, 109 S.Ct. at 2861. Such plans are exempt from challenges of discrimination under the ADEA. However, if such pension plans have been modified subsequent to the enactment of the ADEA, the modifications may subject the plans to challenges that they *are* designed as a subterfuge. To the extent that post-ADEA modifications increase any age-based disparity in pre-ADEA pension plans, *McMann* does not insulate such plans from challenge. *Id.* at 2862. In order for post-ADEA modifications to convert a benefit plan into a subterfuge, the modifications must be "significant, or at least relevant to the alleged discriminatory practice." *EEOC v. County of Orange*, 837 F.2d 420, 423 (9th Cir. 1988).

Defendants argue that the change in the language of the age-45 restriction from "over the age of 45" to "age 45 or over" is neither significant nor relevant because the pension plan always excluded those 45 or older from participation. Consequently, the 1978 amendment did not change the implementation of the plan at all. Plaintiffs, however, point to the language which increased the average salary utilized to compute benefits from 2% to 2.5% (an increase of 25%), and to the language which reduced the period for vesting of benefits from 20 to 10 years.

The totality of the 1978 amendments to the pension are certainly at least relevant to the claim of discrimination based on the age–45 exclusion, because they evince an intentional preference for younger workers, at the expense of workers 45 and older. Consequently, the modifications bring the pension plan within the purview of the ADEA, notwithstanding the original plan, adopted in 1945, would have been exempt from such scrutiny under *McMann*.

The parties have submitted only one post-*Betts* case which has applied *Betts* to a pension plan similar to the one at issue here. In *American Ass'n of Retired Persons v. Farmers Group*, 943 F.2d 996 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992), the court determined the applicability of the § 623(f)(2) exemption to a plan which had been modified in 1978. *Farmers Group* held that *Betts* modifies the elements of a plaintiff's *prima facie* case by requiring

the plaintiff to "at least raise an inference of discriminatory intent at the outset." *Id.* at 1000.

The plan at issue in *Farmers Group* may be distinguished from the City's pension plan in that it specifically affected benefits for employees who were over the age of 65. However, the evidence considered by the court in determining whether the plan sought to intentionally discriminate in violation of the ADEA is instructive. In affirming the district court's grant of summary judgment in favor of the plaintiffs, the court cited testimony by two employees of the defendant that tended to show that the pension plan's structure was designed to encourage younger workers to join the company, and conversely to discourage older workers from staying with the company. *Id.* at 1001. The testimony included statements that "younger employees morale might be negatively affected if employees over 65 received the same [benefits]" and "career growth and promotional opportunities are limited by those who stay on." *Id.*

Plaintiffs in the instant case have put forth similar testimony by Charles Dunn, a member of the Pension Advisory Committee from 1984 to 1988. In deposition testimony regarding the removal of the age-45 exclusion Dunn stated:

> I think just some people pointed out that when you hire older people, that you're going to come along with heart trouble, you're going to come along with diabetes, you are going to come along with hardening of the arteries and all other ailments that come with age ... and they said you know that's going to dip into the pension. A guy comes here at age fifty-five, he's already at age fifty-six, bingo, he gets a heart attack, and he says it happened at work, you know, and its work related.[18]

 Plaintiffs argue that Dunn's testimony suggests a discriminatory bias against older workers as manifested through the age–45 exclusion. The Court finds that, at the least, his testimony raises

an inference that the plan was an attempt by the City to discriminate with regard to the hiring of City employees, a nonfringe benefit aspect of the employment relationship. This finding, precludes summary judgment with regard to the ADEA claim.

*Willfulness Under the ADEA*

*Farmers Group* also considered the issue of willful violations of the ADEA, stating that an employer's violation of the ADEA is willful where the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 1005 (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).

The court found that the Farmers Group intentionally ignored advice of its own in-house counsel which warned that the provisions of its plan were not authorized by either the ADEA or the Department of Labor interpretations. The court found that the Farmers Group had willfully violated the ADEA by intentionally ignoring its own attorneys' advice regarding the legality of its plan. *Farmers Group,* 943 F.2d at 1005. Specifically, the court found that the Farmers Group had acted with reckless disregard by "not bothering to find out what the law required." *Id.*

Like the Farmers Group, the City also ignored a memorandum from Chief Assistant City Attorney, Frank X. Kowalski, which expressed doubts as to the validity of the City's position that the pension plan was exempt from the provisions of the ADEA under § 623(f)(2).[19] The City argues that it has been vindicated in its decision to ignore the Kowalski memo by the Supreme Court's decision in *Betts.* While *Betts* did strike down the EEOC regulations requiring that age-based pension plans be cost justified, it did not totally insulate such plans from challenge. When, as here, such a plan has been modified after the enactment of the ADEA, and that

---

**18.** See Deposition of Charles Dunn, Member of the City's Pension Rewrite Committee, May 4, 1989, pp. 43–45.

**19.** See Deposition of Frank X. Kowalski, Exhibit No. 21.

modification is at least relevant to the challenged discrimination, the plan may be challenged as discriminatory. The Plaintiffs have raised the requisite inference of discrimination required by both *Betts* and *Farmers Group.* Further, by ignoring the advice of its own counsel regarding the legality of its pension plan, the City demonstrated a reckless disregard for whether the pension plan violated the ADEA. The Court finds that Plaintiffs have put forth sufficient evidence of willful discrimination under the standard enunciated in both *Betts* and *Farmers Group* to preclude summary judgment as to the ADEA claim.

### DEFENDANTS' MOTION TO DISMISS ALL OPT–IN PLAINTIFFS AND TO STRIKE ALL NOTICES OF OPT–IN AFTER THE EEOC FILED SUIT

The law is clear in this circuit that under § 626(c)(1), the filing of an EEOC suit to enforce the requirements of the ADEA does not terminate a private suit filed prior to the initiation of the EEOC suit. In *Equal Employment Opportunity Comm'n v. Eastern Airlines, Inc.,* 736 F.2d 635 (11th Cir.1984), the court held that the plaintiff's private ADEA action against Eastern, commenced prior to the EEOC's naming the plaintiff as a charging party in its suit, remained viable after Eastern and the EEOC negotiated a consent decree. *See also Castle v. Sangamo Weston Inc.,* 744 F.2d 1464 (11th Cir.1984) (following *EEOC v. Eastern*). Since the named Plaintiffs in the instant case filed their ADEA action before the EEOC filed suit against the City, that action remains viable notwithstanding the dismissal of the EEOC suit. Consequently, those persons who chose to opt-in to the Plaintiffs' suit should not be dismissed.

### PLAINTIFFS' ACTIONS UNDER THE EQUAL PROTECTION CLAUSES OF THE FEDERAL AND FLORIDA CONSTITUTIONS

The Florida Supreme Court has held that the Equal Protection Clause of the Florida Constitution is designed to operate like that of the United States Constitution. More-over, Florida Courts have implied a "lock step" like provision between the Florida and Federal Constitutions on this provision, consistently holding that Florida Courts are bound by Federal precedent regarding the Equal Protection Clause. *Osterndorf v. Turner,* 426 So.2d 539 (Fla.1982). Therefore, the analysis is the same for Plaintiffs' claims under both Constitutions. *Schreiner v. McKenzie Tank Lines and Risk Management Services, Inc.,* 432 So.2d 567 (Fla.1983).

Both Plaintiffs and Defendants correctly state that the standard of review under the Equal Protection Clauses of the Florida and Federal Constitutions is a "rational basis" test since neither a suspect class nor a fundamental right is in jeopardy. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Under a rational basis test, the Court will only invalidate legislative action which is "patently, wildly [or] totally irrational". *Pontarelli Limousine, Inc. v. City of Chicago,* 929 F.2d 339 (7th Cir.1991). Classifications advanced by a statute should be invalidated by the Court as contrary to the Equal Protection Clause only when "based on reasons totally unrelated to the pursuit" of a legitimate state goal.

Under a rational basis test, it is only necessary that the court be able to "hypothesize plausible reasons for [the] legislation that are within the legitimate goals of a government, nothing else is required to validate the governmental classification and it does not matter whether the reasons advanced [by the court] actually motivated the" legislation. *Evans v. City of Chicago,* 873 F.2d 1007 (7th Cir.1989). A legislature's "classification would still withstand equal protection scrutiny if it rationally furthered some legitimate governmental interest other than that specifically stated" by the legislature. *United States Department of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973) and *Williams v. Wohlgemuth,* 366 F.Supp. 541, 547 (W.D.Pa.1973), *aff'd,* 416 U.S. 901, 94 S.Ct. 1604, 40 L.Ed.2d 106 (1974).

■ In addition, "[i]f the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Medora v. Colautti,* 602 F.2d 1149 (3rd Cir.1979). Moreover, this Court follows the established principle that legislative action is presumed to be constitutional, even if source materials normally resorted to for assistance are unavailable to aid in the determination of the actual basis underlying the legislative policy. *McDonald v. Board of Election,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). This Court can conceive of a legitimate state end served by the age exclusion in the City's Pension Plan.[20] Therefore, the age exclusion passes a rational basis test and does not violate the Equal Protection Clause of either the Federal or Florida Constitutions.

PLAINTIFFS' CLAIMS FOR RETROACTIVE SERVICE CREDIT TO EMPLOYEES UPON REMOVAL OF THE AGE–EXCLUSION

■ In Plaintiffs' Memorandum in Support of their Motion for Summary Judgment Arising under the Equal Protection Clauses and in Opposition to Defendants' Motion for Summary Judgment based upon Equal Protection, Plaintiffs assert a rationale and claims for relief which do not appear anywhere on the face of their complaint. In this Memorandum, Plaintiffs assert injury and damages to current City employees who were employed prior to the 1988 revision of the Pension Plan. Plaintiffs argue that employees hired prior to 1988 who were ineligible to join the Pension Plan as of the date of their hire, but who are now eligible for membership in the

Pension Plan, are denied equal protection as opposed to those who are hired by the City after 1988. Federal law is clear that the Court can issue any relief necessary to do justice to a party, even if not prayed for in the complaint. F.R.Civ.P. 54(c) (every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings).

However, the City's classification of employees based upon date of hire, for purposes of determining retirement benefits need only pass a rational basis test, since the classification involves neither a "suspect class" nor a fundamental right. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). This Court specifically finds that the classification by date of hire passes a rational basis test. The state has a legitimate interest in protecting public funds. *Robinson v. Rhodes,* 424 F.Supp. 1183 (N.D.Ohio 1976); *Kennedy v. United States,* 19 Cl.Ct. 69 (1989). The City made social security contributions on behalf of those workers not eligible to join the Pension Plan at the time of their hire. To allow those employees retroactive "credit" for Pension benefits under the plan, would allow these employees to "double dip" into the public funds and would result in an unjust windfall to the employees and an unfair burden upon the City and its taxpayers. Therefore, the Court finds that Plaintiffs' argument fails over Defense Objection and Defense Motion for Summary Judgment (addressed in Defendants' Memorandum in Response). The Court finds that no genuine issue of material fact exists as to the Plaintiffs' claim for retroactive pension credit for current employees,

**20.** In 1945, it was unusual for an employee to work past the age of sixty-five. Since the Pension Plan had a twenty (20) year vesting period and since the City made *no* social security contributions on behalf of employees who participated in the pension plan, there remained the distinct possibility that an employee who worked for the City for less than twenty years and who then retired would be left without *any* retirement benefits, whatsoever. Combining this unsettling result with the overall younger

retirement age and shorter life span at the inception of the Pension plan, this Court specifically finds a legitimate state interest in preventing City employees from facing retirement without any benefits. That this objective is indeed a state interest is clearly evidenced by Congress' passing of the Social Security Act and all further legislation to promote and encourage the financial stability of retired persons in the United States.

and that summary judgment for Defendants is appropriate.

## MOTIONS FOR SUMMARY JUDGMENT AS TO THE CLAIMS BASED ON BOTH THE FL–ADEA AND THE FHRA

Plaintiffs argue that the *Betts* interpretation of the federal ADEA should not apply to cases involving the FL–ADEA or the FHRA. Defendants, however, urge this Court to rely on *Betts* in interpreting both of the Florida statutes.

The Florida Supreme Court has held that the policy behind both the FL–ADEA and the FHRA is based upon and similar to the policy behind the federal ADEA. *Morrow v. Duval County School Bd.*, 514 So.2d 1086 (Fla.1987). Further, both the FL–ADEA and the FHRA should be read *in pari materia* in a manner that gives effect to the purposes of their provisions. *Id.* at 1088.

Florida statutes which are modeled after federal laws will generally be given the same construction in Florida courts as the federal statute would be given in federal courts, "to the extent such construction is harmonious with the spirit and policy of the Florida legislation on the subject." *Massie v. Univ. of Florida*, 570 So.2d 963, 972 (Fla. 1st DCA 1990). Further, federal precedent construing provisions of federal statutes upon which Florida statutes are based should be accorded deference under Florida law. *See School Bd. of Leon County v. Hargis*, 400 So.2d 103, 108 (Fla. 1st DCA 1981) (applying Title VII's standards of proof as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to the FHRA). Notwithstanding this general deference to federal court precedent, Florida courts are not bound by a federal court's interpretation of a federal statute when construing a similar Florida statute. *See Massie*, 570 So.2d at 973 (Florida Supreme Court may *consider* United States Supreme Court interpretation of federal statute when interpreting similar Florida statute).

The parties have not submitted, nor has this Court found, any Florida case law addressing whether *Betts* should apply to cases involving the FL–ADEA or the FHRA. However, the Court need not make that determination at this juncture. Since this Court has found that Plaintiffs have raised a sufficient inference of intentional discrimination to preclude summary judgment on the ADEA claim even under *Betts*, summary judgment would not be appropriate under either the FL–ADEA or the FHRA.[21]

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF AARP

■ Plaintiffs and Defendants agree, and the Court concurs, that Plaintiff AARP has no standing in its own right. Rather, the AARP seeks to represent the interests of its members injured by Defendants' allegedly discriminatory actions regarding the age forty-five exclusion. Because the AARP does not allege any direct injury to itself, Plaintiff AARP's standing to participate in the instant action is governed by the doctrine of associational standing. *AARP v. E.I. DuPont de Nemours and Comp., Inc.*, 677 F.Supp. 351, 353 (E.D.Pa. 1987).

■ The doctrine of associational standing limits the relief which can be sought by an associational plaintiff to prospective relief. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To effectively obtain associational standing a plaintiff must not only allege injury to at least one of its members, but also must show that the relief sought is prospective, not compensatory. *Warth*, 422 U.S. at 515, 95 S.Ct. at 2213. The Courts have required prospective relief for associational standing because it allows the benefit of any remedy granted by the court to flow to other injured members of the organization. *Id.*

---

**21.** Plaintiffs have also moved for summary judgment with regard to the claims based on the FL–ADEA and the FHRA. However, as articulated in this opinion, there exist genuine issues of material fact as to whether the pension plan actually discriminated on the basis of age. Therefore, Plaintiffs motion for summary judgment as to these claims is also denied.

In the instant case, Defendants allege that the removal of the age forty-five exclusion eliminates the need or relevance for prospective relief, since the allegedly discriminatory provision has been removed from the City's Pension Plan. Courts have held that absent a showing of an employer's intent to return to discriminatory practices, declaratory and injunctive relief prohibiting such is inappropriate. *EEOC v. City of Chicago*, 51 FEP Cases (BNA) 503, 506, 1989 WL 134788 (N.D.Ill.1989) (absent showing of intent to return to discriminatory practices, injunction restraining same is unnecessary). Moreover, federal courts should not grant injunctive relief when the conduct sought to be stopped has ceased and is unlikely to resume. *Ragsdale v. Turnock*, 841 F.2d 1358, 1366 (7th Cir. 1988). Therefore, there exists no discriminatory practice in the City's Pension Plan which requires injunctive or declaratory relief by this Court.

Plaintiffs' respond that the claims under the ADEA for retroactive pension benefits are prospective in nature citing *Puckett v. United Air Lines, Inc.*, 705 F.Supp. 422 (N.D.Ill.1989). However, in *Puckett*, the Court found only that application of current law to an employee's prior years of service was not prohibited as *retroactive* application of law newly decided. *Id.* at 424 (use of formula dependent on retroactive variables does not constitute retroactive application of current law). There is no discussion in *Puckett* regarding the *prospective* nature of the retroactive benefits. This Court finds the holding in *Puckett* inapplicable to the determination of the existence of prospective relief sought by the AARP.

It is true that any declaratory judgment issued by the Court on Plaintiffs' claims arising under the Equal Protection Clauses of the United States and Florida Constitutions is sufficient prospective relief to give the AARP standing in this action as to the equal protection claims. However, in this Order the Court simultaneously grants Defendants' motion for summary judgment as to Plaintiffs' claims arising under the Equal Protection Clauses of the United States and Florida Constitution. Although AARP had standing as to those two counts of the complaint, the AARP is effectively removed from this action by the Court's granting of Defendants' Motion for Summary Judgment on the only two issues properly allowing for prospective relief. All other relief which could correctly be awarded in this action is compensatory, not prospective. Therefore, as a Plaintiff under the doctrine of associational standing, the AARP has no standing in any of the remaining claims before this Court and summary judgment against the AARP is appropriate.

## CONCLUSION

This Court, after reviewing the memoranda, interrogatories, affidavits, motions and case law submitted by all parties, concludes that there are no genuine issues of material fact as to Defendants' Motion for summary judgment on Plaintiffs' claims arising under the Equal Protection Clause of the United States and the Equal Protection Clause of the Florida Constitution, the Plaintiffs' claims for retroactive pension benefit credit nor the Defendants' motion for summary judgment as to Plaintiff AARP. However, this Court recognizes that there exist genuine issues of material fact regarding whether Defendants' actions were intentional, wilful or a subterfuge as defined by the United States Supreme Court in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 2861, 106 L.Ed.2d 134 (1989). Accordingly it is

ORDERED that the Defendants' motion for summary judgment on the Plaintiffs' claim under the Equal Protection Clauses of the U.S. and Florida Constitutions, Counts II and III, be GRANTED.

ORDERED that the Defendants' objection and motion for summary judgment on Plaintiffs' claim for retroactive pension credits for current City employees who were ineligible to join the Pension Plan as of the date of their hire be GRANTED.

ORDERED that Defendants' motion for summary judgment as to Plaintiff AARP be GRANTED.

ORDERED that all other motions for summary judgment be DENIED.

ORDERED that all motions for oral argument are hereby DENIED.

DONE AND ORDERED.