**BURGER KING CORPORATION,**
**Plaintiff,**

v.

**Christopher Rdell WEAVER a/k/a**
**C.R. Weaver, Defendant.**

**No. 98–1083–CIV.**

United States District Court,
S.D. Florida.

Aug. 27, 1998.

---

Don L. Horn, Gallwey, Gillman, Curtis, Vento & Horn, P.A., Miami, FL, Howard S. Wolfson, Whitman Breed Abbott & Morgan, New York City, for plaintiff.

Robert Zarco, Robert Einhorn, Zarco & Pardo, P.A., Miami, FL, for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

MORENO, District Judge.

THIS CAUSE came before the Court upon Plaintiff Burger King Corporation's Motion for a Preliminary Injunction, filed on **June 10, 1998.**

THE COURT has considered the motion, responses and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the motion is GRANTED.

1. The 1990 Case was transferred to the undersigned following Judge Marcus' appointment to the Eleventh Circuit Court of Appeals.

2. Paragraph 16.A(8) of the Franchise Agreement for the Kalispell restaurant provides, in pertinent part:
   If an act of default occurs and FRANCHISEE fails to cure the default within the cure period specified and if no time is specified then within

## I. BACKGROUND

Plaintiff Burger King Corporation ("BK") previously filed suit in this district in 1990, in the case styled *Burger King Corp. v. C.R. Weaver and M–W–M, Inc.,* No. 90–2191–CIV–MORENO (S.D.Fla. filed Sept. 21, 1990) (hereinafter the "1990 Case"), to collect unpaid royalties, advertising contributions and rent that was due and owing to BK under agreements Defendant Weaver had entered into for two BK franchises in Great Falls, Montana. BK later added claims in the 1990 Case for trademark infringement when Weaver refused to cease use of BK's trademarks following termination of the Great Falls franchise agreements based on non-payment. In September 1996, then-District Judge Stanley Marcus[1] granted summary judgment in favor of BK on its trademark infringement and breach of contract claims against Weaver. Judge Marcus subsequently entered a Final Judgment in favor of BK in the amount of $4,993,524.97. An appeal in the 1990 Case was recently heard before the United States Court of Appeals for the Eleventh Circuit. The parties are presently conducting Court-ordered post-judgment discovery in the 1990 Case.

Despite the problems involving his Great Falls restaurants, Weaver remained the franchisee of BK restaurant # 4963, in Kalispell, Montana (the "Kalispell restaurant"). However, by Notice of Default dated April 22, 1998, BK advised Weaver that he was in default under his franchise agreement for the Kalispell restaurant based on his failure to satisfy the Final Judgment or post an appeal bond.[2] Weaver argues that he is not in default, and based on this dispute, BK filed the instant action, which, after subsequent amendment of the complaint, asserts claims for, *inter alia,* trademark infringement and

thirty (30) days of notice of default, [Burger King Corporation] may ... terminate the license granted herein.... The following shall be an act of default:
(8) A final judgment against FRANCHISEE remains unsatisfied of record for thirty (30) days (unless a supersedeas or other appeal bond has been filed)....
Archer Aff.Ex. B at 9.

breach of contract, and seeks a judgment declaring that Weaver is in default and that BK could therefore terminate the franchise agreement if Weaver's default was not cured.

Weaver, in turn, filed an action in Montana state court, where Weaver obtained an *ex parte* temporary restraining order enjoining BK from terminating his franchise agreement. BK removed the Montana action to the United States District Court for the District of Montana. *Weaver v. Burger King Corp.,* NO. CV–98–72–M–DWM (D.Mont. filed May 19, 1998) (the "Montana action"). Arguing in this Court that Defendant's Montana action was a "mirror-image" of the instant action, and that this case was the "first-filed" action, BK sought to enjoin Weaver from proceeding with the Montana action. BK also argued that Weaver's claim was a compulsory counterclaim in this action. However, in an Order of Transfer filed on June 26, 1998, Judge Donald W. Molloy of the United States District Court for the District of Montana, Missoula Division, transferred the Montana action, which is related to both the instant action and the 1990 Case, to this district.[3] Judge Molloy specifically noted that in the 1990 Case, oral argument on Weaver's appeal was recently heard before the Eleventh Circuit Court of Appeals.

BK has filed a motion for a preliminary injunction in this case, seeking an order restraining Weaver from trading upon the goodwill and reputation of BK by continuing his unauthorized use of the BK trademarks and service marks (the "BK Marks"), trade dress, and the BK system of restaurant operation in connection with his terminated franchise—the Kalispell restaurant. Weaver, seeking to have it his way with BK, argues that the motion for a preliminary injunction should be denied as moot.

## II. WHETHER BK'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF IS MOOT

In order to grant the preliminary injunctive relief sought by BK, this Court must find that BK has satisfied the following four requirements:

(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

*Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.,* 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted). In addition, "[t]he grant or denial of a preliminary injunction is a decision within the discretion of the district court." *Id.* (citation omitted).

■ BK has presented an exhaustive analysis of the four prerequisites to the granting of preliminary injunctive relief. However, Weaver has responded by asserting only one central argument for the Court to consider— that BK's motion for a preliminary injunction should be denied as moot because, upon learning that BK sought injunctive relief, Weaver commenced, and has subsequently completed, a "de-identification" of the Kalispell restaurant as a BK restaurant. For instance, Weaver asserts that he has ceased using signs, banners, labeling, packaging, advertising, promotional display and point of sale materials that bore or made reference to any of BK's Marks, or any colorable imitation of such Marks, at the Kalispell restaurant. Weaver has submitted samples of his new burger and french fry containers, cups and bags without BK Marks, and Weaver has confirmed that he has no intention of ever using BK's Marks in the future. Weaver thus maintains that BK cannot establish the threat of "continuing irreparable injury" required for the granting of injunctive relief.

■ The Court agrees with Weaver's argument that, as a general principle, when conduct sought to be enjoined has ceased and is unlikely to resume, federal courts should not grant injunctive relief. *Snair v. City of Clearwater,* 787 F.Supp. 1401, 1415 (M.D.Fla. 1992) (noting that "federal courts should not grant injunctive relief when the conduct sought to be stopped has ceased and is unlikely to resume") (citation omitted). Weav-

---

**3.** The former Montana action is currently pending in this district before Senior Judge Lenore C.

Nesbitt, although a motion has been filed to transfer that case to the undersigned.

er thus asserts that there is no need for injunctive relief here given his assurances that he will not use BK's Marks in the future. *See, e.g., American Express Travel Related Servs. Co., Inc. v. MasterCard Int'l Inc.,* 776 F.Supp. 787, 791 (S.D.N.Y.1991) ("When a defendant revises an allegedly infringing commercial and represents that the original commercial will not be broadcast in the future, the need for injunctive relief as to the original commercial is moot.") (citations omitted).

BK argues that preliminary injunctive relief should be entered despite Weaver's representation that he will not infringe in the future. In the 1990 Case, Weaver was found to have willfully infringed BK's trademarks and service marks for a period of almost eight years, leading to the Final Judgment against Weaver of almost $5 million. Weaver apparently would have continued to infringe at the Kalispell restaurant had BK not filed its preliminary injunction motion. In addition, Weaver's past trademark violations do indicate a danger that he would commit such violations in the future. Furthermore, the Court finds that Weaver will not be harmed by an injunction, and this action has not been rendered moot given the dispute over BK's right to terminate the franchise based on Weaver's failure to pay or bond the Final Judgment in the 1990 Case.

Since Weaver has wilfully violated BK's trademark rights and failed to cease his actions until BK sought injunctive relief, the Court concludes that BK is entitled to injunctive relief despite Weaver's claim that this issue has been mooted by his voluntary cessation of use of BK's Marks and his pledge not to use BK's Marks in the future. *See, e.g., Clayton v. Howard Johnson Franchise Sys. Inc.,* 730 F.Supp. 1553, 1558 (M.D.Fla. 1988) ("[T]he mere discontinuance of infringing conduct does not render injunctive relief inappropriate. There is a cognizable danger of future violations, given the past violations by Plaintiffs.") (citations omitted); *see also Heaton Distrib. Co. v. Union Tank Car Co.,* 387 F.2d 477, 486 (8th Cir.1967); *E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F.Supp. 457, 468 (N.D.Cal.1991).

The analysis employed by the United States Court of Appeals for the Ninth Circuit in *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132 (9th Cir.1986) is particularly instructive on this issue. Reversing the district court's refusal to grant injunctive relief, the court explained:

> The defendants had willfully violated [plaintiff's] trademarks rights. The defendants refused to stop violating those rights until [plaintiff] brought suit in federal district court. We should not require [plaintiff] also to introduce concrete evidence that the defendants are likely to infringe again. If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark.

*Id.* at 1135–36.

### CONCLUSION

Based on the above analysis, it is ADJUDGED that BK's Motion for a Preliminary Injunction is GRANTED as follows:

(1) Defendant Christopher Rdell Weaver a/k/a C.R. Weaver and all persons acting on his behalf, in concert with him, or under his control, are enjoined from

(i) manufacturing, packaging, distributing, selling, advertising, displaying or promoting any product or service bearing any of BK's trademarks or service marks, or any colorable imitation thereof;

(ii) displaying or using any of BK's trademarks or service marks, or any colorable imitation thereof, to advertise or promote the sale of, or to identify, his restaurant (the Kalispell restaurant), or any other restaurant operated by Weaver, or any product or service provided or sold at his restaurant, or at any other restaurant operated by Weaver; and

(iii) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Weaver's Kalispell restaurant, or any other restaurant operated by Weaver, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated or connected

with, or licensed, sponsored, authorized, or approved by BK.