950 So.2d 501 (2007)
H & M HEARING ASSOCIATES, LLC, Appellant,
v.
John A. NOBILE and Deborah Leasure d/b/a Clarity Hearing Center, Appellees.
No. 2D06-2184.
District Court of Appeal of Florida, Second District.
March 2, 2007.
*502 Kenneth N. Johnson, Stanley D. Klett, Jr., and John T. Mulhall III of Rutherford Mulhall, P.A., Palm Beach Gardens, for Appellant.
Karl C. Landsteiner of Karl C. Landsteiner, P.A., Fort Myers, for Appellee John A. Nobile.
No appearance for Appellee Deborah Leasure d/b/a Clarity Hearing Center.
SILBERMAN, Judge.
H & M Hearing Associates, LLC (H & M), appeals a nonfinal order denying its motion for temporary injunction regarding a covenant not to compete with its former employee, John A. Nobile (Nobile). Because the trial court failed to address an issue raised by H & M, we reverse and remand for the trial court to resolve the issue.
In November 2003, Nobile sold his hearing aid business to H & M for $250,000. The asset purchase agreement contained a noncompete provision that prohibited Nobile from directly or indirectly competing with H & M in Lee County for five years after Nobile left H & M's employ.[1] After the sale, Nobile continued in H & M's employ until H & M fired him in May or June of 2005. In October 2005, H & M filed suit,[2] alleging that Nobile violated the noncompete provision and seeking, among other things, temporary and permanent injunctive relief against Nobile. After H & M filed a motion for temporary injunction, the trial court conducted a multi-day evidentiary hearing.
The evidence reflects that Nobile, while employed by H & M, lent money to Deborah Leasure, a former H & M employee, to enable her to open Clarity Hearing Center (Clarity). Clarity is a hearing aid business located less than a mile from H & M's business location and competes with H & M. When H & M learned of Nobile's loan to Leasure, H & M terminated Nobile's employment. Nobile then went to work for Clarity. He provided advice to Leasure in starting up her hearing aid business and permitted her to use his name and image in advertising for Clarity. Nobile continued to lend money to Leasure to finance Clarity, and he also executed a guaranty on Clarity's account with Starkey, a major manufacturer of hearing aids. The guaranty allowed Clarity to purchase hearing aids on credit from Starkey. Nobile admitted that Leasure would have been unable to open her business without his assistance. After H & M filed suit, Nobile stopped working with Clarity.
On April 10, 2006, the trial court entered an order, finding that Nobile had not worked in violation of the noncompete provision since December 2005. Concluding that H & M failed to demonstrate the element of irreparable harm because Nobile quit working at Clarity in December 2005, the trial court denied the motion for temporary injunction. In its motion for rehearing, H & M argued that Florida law creates a presumption of irreparable harm and, further, that the evidence established *503 the existence of irreparable harm. After the trial court denied H & M's motion for rehearing, H & M sought review of this nonfinal order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B).
The standard of review regarding the grant or denial of a motion for temporary injunction is abuse of discretion. Ware v. Polk County, 918 So.2d 977, 979 (Fla. 2d DCA 2005); Supinski v. Omni Healthcare, P.A., 853 So.2d 526, 530 (Fla. 5th DCA 2003). At issue is whether H & M demonstrated the likelihood of irreparable harm, one of the four elements necessary to support a temporary injunction. See Santos v. Tampa Med. Supply, 857 So.2d 315, 316 (Fla. 2d DCA 2003); Bellach v. Huggs of Naples, Inc., 704 So.2d 679, 680 (Fla. 2d DCA 1997). H & M argues that irreparable harm is presumed in the situation of a covenant not to compete under section 542.335(1)(j), Florida Statutes (2003). See Variable Annuity Life Ins. Co. v. Hausinger, 927 So.2d 243, 244-45 (Fla. 2d DCA 2006). However, the presumption of irreparable harm is rebuttable. See Am. II Elecs., Inc. v. Smith, 830 So.2d 906, 908 (Fla. 2d DCA 2002); Don King Prods., Inc. v. Chavez, 717 So.2d 1094, 1095 (Fla. 4th DCA 1998). Nobile is essentially arguing that he rebutted the presumption by presenting evidence that he was no longer employed at Clarity Hearing. No one disputed the evidence that Nobile's employment at Clarity ended on December 12, 2005. Thus, by March 15, 2006, the date of the last hearing on the motion for temporary injunction, Nobile had not been employed at Clarity for three months.
H & M relies on Burger King Corp. v. Weaver, 33 F.Supp.2d 1037 (S.D.Fla.1998), in which the court found that a temporary injunction was warranted even though the trademark infringement had ceased. The court stated "that, as a general principle, when conduct sought to be enjoined has ceased and is unlikely to resume, federal courts should not grant injunctive relief." Id. at 1039. However, the court departed from the general principle, explaining that in an earlier case, Weaver
was found to have willfully infringed BK's trademarks and service marks for a period of almost eight years, leading to the Final Judgment against Weaver of almost $5 million. Weaver apparently would have continued to infringe at the Kalispell restaurant had BK not filed its preliminary injunction motion. In addition, Weaver's past trademark violations do indicate a danger that he would commit such violations in the future.
Id. at 1040. The court also found that Weaver would not be harmed by the entry of an injunction. Id.
We conclude that H & M's reliance on Burger King is misplaced because the record here does not establish that Nobile had a prior history of violating the covenant not to compete. Similarly, in Stephan Co. v. Faulding Healthcare (IP) Holdings, Inc., 844 So.2d 676 (Fla. 4th DCA 2003), the Fourth District distinguished Burger King and reversed the temporary injunction that had been entered against the defendant manufacturer (Stephan). The court recognized "the need to demonstrate the threat of future harm in order to justify the entry of this extraordinary remedy." Id. at 678. Based on the facts before it the court concluded, "Not only is there no history of repeated infringing activity on the part of Stephan, there is no basis to conclude that there is a danger of future violations." Id.
Here, it appears that the trial court found no danger of future violations based on Nobile's past employment at Clarity. Although Nobile only ceased the employment after H & M filed suit, Nobile did not have a prior history of violation as the *504 defendant did in Burger King. Accordingly, we cannot say that the trial court abused its discretion in denying the injunction on this basis.
There is, however, another basis on which the trial court could arguably have granted injunctive relief, but the trial court failed to address it. In addition to presenting evidence and arguing at the temporary injunction hearing that Nobile's employment with Clarity violated the covenant not to compete, H & M also addressed Nobile's other conduct. H & M established that Nobile lent money to Leasure for the express purpose of setting up a competing hearing aid business and that Nobile had signed a guaranty so that Leasure could obtain an account with Starkey, a major manufacturer of hearing aids. Leasure testified that without Nobile's guaranty, Starkey probably would not have provided the product on credit to her business. Nobile admitted that Leasure could not have opened the business without his assistance.
H & M argues that Nobile's lending of funds to Leasure and providing a guaranty to allow her to obtain product violated the covenant. At the hearing and in its orders denying a temporary injunction and denying the motion for rehearing, the trial court did not address the funding of the business and the guaranty of the Starkey account. H & M further argues that until the money lent to Leasure is repaid, Nobile has an interest in Clarity successfully competing against H & M. H & M contends that Clarity remains in business solely as a result of Nobile's financial support and the guaranty, which it submits Nobile provided in violation of the noncompete agreement.
Because the trial court did not address whether the funding and the guaranty constitute an ongoing violation of the restrictive covenant, justifying injunctive relief, we reverse. On remand, the trial court must determine whether H & M is entitled to injunctive relief due to Nobile's actions relating to funding the business and executing a guaranty.
Reversed and remanded.
WHATLEY and NORTHCUTT, JJ., Concur.
NOTES
[1] The agreement provides, among other things, that Nobile shall not directly or indirectly be actively engaged in the business of sales or service of hearing aids except as an employee of H & M. Further, the agreement provides that Nobile shall not "[o]wn, manage, control, operate, direct, join or participate in the ownership, management, operation, or control of any business which engages in the sales or service of hearing aids" in Lee County.
[2] H & M named Deborah Leasure, d/b/a Clarity Hearing Center, as a defendant, but the parties later agreed to voluntarily dismiss Leasure from the lawsuit. The order appealed, however, retains her name in the style of the case.